PEOPLE ex rel. WALLACE v. DIEHL et al., Police Commissioners.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

POLICEMAN—DISMISSAL—REVIEW.
    Relator, a member of the police force of Buffalo, was asked to sign a resignation, and was told that he might better resign than have charges preferred against him. He did not sign the resignation, but requested a leave of absence, and, on this being refused, surrendered his keys and badge, and did not report for duty for seven days thereafter. *Held*, that a resolution of the police board declaring the absence a resignation under their rule 515, providing that unexplained absence for five days shall, at the option of the board, be deemed a resignation, would not be disturbed.
    McLennan, J., dissenting.

Certiorari by the people, on the relation of Emery Wallace, to review the proceedings of Conrad Diehl and others, constituting the board of police of the city of Buffalo, in removing relator from the police force. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS and LAUGHLIN, JJ.

Tuttle & Callan, for relator.
W. H. Cuddeback, for defendants.

WILLIAMS, J. The hearing is upon the writ, return, and papers upon which the writ was granted (section 2138, Code Civ. Proc.), but the facts are settled by the return, which includes the evidence. If that is defective, a further return may be had, under section 3135. People v. Wurster, 149 N. Y. 549, 44 N. E. 298. The return shows that the relator was charged with violation of rule 289:

"A member of the force when entering upon duty, must be neat in his clothes, and clean in his personal appearance, and in his dress in conformity with the rules and regulations."

And rule 311:

"No member of the police shall leave the city of Buffalo, or be absent from duty (except when disabled by sickness), without permission from the superintendent, or acting superintendent; and such permission to be absent from duty, for a longer period than ten days, shall not be granted without the consent of the board of police."

That he was tried upon these charges, and found guilty thereof, and upon such conviction was sentenced to be dismissed from the police force. It also appears from the return that a violation of rule 311, as to absence from duty without leave, constituted an offense against the rules, regulations, and discipline of the force, for which the board of police was duly authorized by the charter of the city and by the rules and regulations of the board to remove and dismiss the relator from the force, but it does not appear from the return that a violation of rule 289, as to cleanliness, constituted any offense authorizing the board to remove or dismiss him from the force. While the charter of the city of Buffalo gave the board of police authority to make rules and regulations for the government and discipline of the force, and for the mode of removals from office, it does not appear from the return that the board ever made any rule or regulation authorizing them to dismiss an officer from office for violation of this rule.

It does not seem to be urged upon this appeal that the defendants had a legal right to dismiss the relator for a violation of this rule 289. We assume that such right did not exist. The order of dismissal must therefore be sustained, if at all, upon the ground of a violation of rule 311, as to absence from duty without permission of the superintendent or the board itself. The evidence and the return show that the relator was absent from November 19, 1897, until November 25, 1897, when his absence was reported to the board, but it was a matter in dispute upon the trial whether such absence was by permission, by consent, or pursuant to an arrangement between him and the superintendent and members of the board or not. On the 19th day of November, 1897, the relator was called before the board, and was examined by a doctor, in the presence of the superintendent and members of the board, with reference to the condition of his clothing and person. He was found to be suffering from some skin disease, which was especially apparent upon his head and face, and his person and clothing were found to be dirty. His appearance was repulsive, and his condition was such as to render him unfit to perform the duties of his office. The return so states, and an examination of the evidence upon the trial fully justifies this statement. Not only does the return fairly state his condition at the time of his examination, but the evidence shows such condition had existed for a long time before such examination was made. Although it was not shown that he actually had any loathsome or contagious disease, yet his condition was certainly such as to lead his associates on the force

to fear that he had, and to avoid him, and object to using the same bed, washroom, towels, or bathtub that he used, for fear of taking some disease from him, and there was an offensive odor came from him, occasioned by the disease or filthy condition of his person or clothing. After the examination herein before referred to, and the same 19th day of November, 1897, the relator was called before the full board of police, and told by them that he ought to resign for the good of the service; that his associates on the force refused to sleep in the same room with him, or to use the same washbasin or towels he used. He was asked to sign a written resignation, which had been prepared, and was told that he might better resign than to have charges preferred against him, but that no threat was intended, and that he was not obliged to sign the resignation. He requested an extended leave of absence, which the board refused. He did not sign the resignation, but surrendered his badge and keys, and left the room, saying, "You will not be bothered by me." When he left this meeting the board supposed he intended to withdraw from the force, though he did not choose to sign the formal resignation. He did not thereafter report for duty, nor serve on the force, until November 26, 1897, when the superintendent reported him absent from duty since November 19, 1897, and the board the same day passed a resolution that his unexplained absence from duty for five days was held and deemed by them to be a resignation under their rule 515, which provides, among other things, as follows: "Unexplained absence without leave of any member of the force, for five days, shall, at the option of the board, be deemed and held to be a resignation of such member, as of the time of beginning of such absence." Thereafter, and December 31, 1897, the relator caused certiorari proceedings to be instituted against the board to procure his reinstatement upon the force. The corporation counsel thereupon advised the board that their action in declaring that the relator had resigned was illegal, because no charges had been made, and he had not been given a trial as provided for by the city charter, and then, on March 7, 1898, the board rescinded their resolution of November 26, 1897, and restored the relator to the force. The certiorari proceedings were thereupon discontinued, on payment by the board of his costs, $25. Thereafter, and March 9, 1898, the charges were made upon which the relator was dismissed from the service, and to review which dismissal this proceeding was instituted. The relator did not serve on the force after November 19, 1897. While these facts are not entirely conceded, yet they are returned by the defendants, and are based upon sufficient evidence to support them, and must be regarded by us as true. Upon these facts the defendants determined that the relator had violated rule 311, by being absent from duty without permission of the superintendent or the board; that he was guilty; and for such offense dismissed him from the force.

The transaction on November 19, 1897, did not amount to a permission, consent, or arrangement that the relator might absent himself from duty, except upon the theory of a resignation, or such absence as might be deemed by the board, under rule 515, to be a resig-

nation. He was asked to resign,—to sign a formal resignation,— which he did not do. He asked for an extended leave of absence, which was refused by the board. No leave of absence was granted at all. He gave his badge and key to the superintendent, and went away under circumstances tending to induce the belief that, while he would not sign a formal resignation, yet he did not intend to serve on the force longer. Upon no possible theory could he be permitted to say that he would remain on the force, and yet would not serve,—would not report for duty. If he was still to be regarded as on the force, then he was absent from duty without permission, and the defendants might properly so determine. They might say he was guilty of violating rule 311, and might dismiss him from the service. The relator was guilty of a dereliction of duty in being absent from duty from November 19 until November 26, 1897, and whether an excuse for such absence appeared in the evidence, and, if so, whether it was sufficient, were questions resting in the good judgment of the police board, and their conclusion will not be disturbed here. People v. French, 110 N. Y. 494, 18 N. E. 133; People v. French, 119 N. Y. 496–499, 23 N. E. 1058; People v. French, 119 N. Y. 505, 23 N. E. 1061; People v. French, 123 N. Y. 636, 25 N. E. 415; People v. Martin, 28 App. Div. 73, 50 N. Y. Supp. 897.

We see no reason why we should make any effort to find a ground for reversing the action of the defendants in this case. The relator had in 1894, 1895, 1896, and 1897 been convicted of violation of the rules and regulations of the board, and had each time been reprimanded by the board and fined. On one occasion he had been at first dismissed from the force, and the board had rescinded their action, and punished him by fine and reprimand. He was not, by reason of his diseased condition, and the filthy condition of his person and clothing, a proper person to be upon the force, and to associate with the other officers thereon, or to serve the public. He ought not, under the conditions disclosed by the return and the evidence, to be restored to the police force of the city of Buffalo, unless the law compels us to restore him. We do not regard the case as one calling for such a disposition.

The proceedings of the defendants should be affirmed, and the writ dismissed, with $10 costs and printing disbursements. All concur, except McLENNAN, J., who dissents.