(No. 23236.—

Tony Prontzinski *et al.* Appellants, *vs.* Edward J. Baker *et al.* Appellees.

*Opinion filed October 14, 1936—Rehearing denied Dec. 2, 1936.*

Robert J. Wing, and Arthur L. Puklin, (G. Walter Zerr, of counsel,) for appellants.

John K. Newhall, and David B. Givler, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants seek reversal of the decree of the circuit court of Kane county dismissing for want of equity their bill seeking to set aside a deed and a bill of sale to certain real and personal property executed by them to appellee Edward J. Baker. The grounds alleged in the bill are fraud, duress and undue influence, pursuant to an unlawful combination or conspiracy of appellees. The bill also alleged that appellants were acting under a mistake and as a compromise of certain void, groundless claims asserted against them. Issues of fact were made up to be submitted to the jury and testimony was heard. At the close of the evidence counsel for appellees moved to withdraw the issue of fact from the jury and to dismiss the bill. This was done accordingly and forms the basis of appellants' complaint here. We shall consider, first, whether appellants' testimony, taken with all reasonable intendments in its favor, tended to support their bill. If so, it was error to take the issues made from the jury; if not, no error intervened.

Appellant Tony Prontzinski's testimony was substantially as follows: He owned the farm involved here until July 2, 1934, (the date of the deed to appellee Baker,) and was then living thereon. Until the spring of 1934 he had been in good health and worked every day operating the farm and dairy, but during that spring he was not in good physical condition, lost weight, was unable to do the work on the farm and was very much depressed. In the early part of May he asked Baker to purchase his farm, but Baker declined, and witness on that day listed the farm for sale with appellee Tanner, a real estate agent, at $150 per acre. There are 240 acres in the farm. The selling price was $36,000. Some four days later Tanner came to the farm and told witness that he had interested Baker in buying the farm and asked how much witness would take for it. Witness thereupon said he would take $38,000 for the

farm, cows and farm machinery. Two days later Tanner told him Baker was willing to buy the farm and machinery at $36,000, but witness refused to sell at that figure. He said, however, that he would sell the farm and personal property for $38,000. A day or two later, Tanner, with Baker and appellee Marvin, drove out to the farm. They saw witness, who told them that if his wife would sign he would sell the farm. Shortly thereafter Tanner again drove to his farm and told him to come in the next morning and complete the sale. This witness stated that he then talked to his wife about the matter and on the next morning called Tanner and told him the deal was off—that his wife would not sign, and he would not, either. He was later that day induced to go to town and talk with Baker. He went to Baker's apartment in the hotel and Baker gave him a drink of whisky. Later, a Mr. Hunt, an attorney, came. Baker there offered him $40,000 for the farm, cows and machinery. Attorney Hunt asked witness if he had sold his farm, and he replied he guessed so. A contract of sale was prepared, which he signed on the assurance of Baker that it was of no effect if his wife did not sign. Baker then gave Tanner a check for $10,000, to be turned over to witness when his wife signed. He went to his home with Tanner and Hunt and asked his wife to sign the contract and she refused to do so. He testified that the hired man came in and told the parties present that they had better take witness to a doctor and have him examined and not take the farm away. Witness' further testimony was substantially as follows: The next day Tanner came back to the farm, and after talking with witness' wife told witness that his wife had refused to sign the contract witness had signed but had burned it, and that Baker was going to get even with her. The next day witness went to see Baker, and Baker told him, "Your wife burned up the papers; they belonged to me and I am going to have your wife

arrested." Witness testified, also, that about noon of that day his wife told him appellee Father Carse had been there to see her. In the afternoon he and his wife drove to St. Charles and went to Baker's bank. There were present at the bank, Father Carse, a Mr. Green, Baker's attorney, Baker and Tanner. Father Carse read the contract, as redrawn, to witness' wife and told her to sign it; that Baker was a rich man and was going to get the farm anyhow. Baker told witness' wife, "If you don't sign the contract, I got my lawyer right here and I will put you in jail." Witness and his wife pleaded with Baker not to take the farm away, and after about three hours they signed the contract and Baker gave witness a check for $10,000, out of which he paid Tanner his commission of $1200 and deposited the balance in the bank. He further testified that the next day he went to Father Carse and asked him to go to Baker and ask him to give the farm back. Witness later furnished an abstract of title and delivered it to Baker's attorney, named Hempstead. On July 2, before going to Hempstead's office, witness and his wife went to an attorney named Doherty and asked him whether they should sign the deed and other papers. They went from Doherty's office to that of Hempstead and signed the deeds and bill of sale and Baker gave them a check for the balance of the money, which witness deposited in the bank. He does not state what advice Doherty gave him, but his actions tend to establish that he was advised by Doherty that he was obligated to sign the deed and bill of sale. The appellant Edith Prontzinski testified to substantially the same facts.

Several witnesses testified as to the value of the farm and chattels. One doctor testified that he examined appellant Tony Prontzinski in August, 1934; that he found signs of cerebral arterio sclerosis; that the patient was emotionally depressed and there was some agitation, and it was his opinion that the same condition existed in May that he

found in August. No one testified appellant was incompetent to make a contract.

Appellants' testimony as to threats on the part of Baker and as to appellant Tony Prontzinski's condition is denied by witnesses for appellees, but for the purpose of this motion our attention is directed only to appellants' evidence. On the motion presented by appellees the question is whether the state of facts as given by appellants' evidence constitutes such fraud, duress and undue influence as to void the deed. "Duress" has been defined as a condition of mind produced by improper external pressure of influence that practically destroys the free agency of a party affected and causes him to do an act or to make a contract not of his own volition. Mere annoyance or vexation will not constitute duress. There must be some compulsion affecting the mind which shows that the execution of the contract or other instrument was not voluntary. (*Illinois Merchants Trust Co.* v. *Harvey,* 335 Ill. 284; *Gregory* v. *Gregory,* 323 id. 380; *Harris* v. *Flack,* 289 id. 222; *Mitchell* v. *Mitchell,* 267 id. 244; *Kronmeyer* v. *Buck,* 258 id. 586.) Mere advice, argument or persuasion does not constitute duress or undue influence if the grantor acts freely when he executes the deed though the same would not have been executed except for the advice, argument or persuasion. *Gregory* v. *Gregory, supra; Campbell* v. *Freeman,* 296 Ill. 536.

We are of the opinion that the evidence produced by appellants does not show duress, coercion or undue influence. Even assuming that appellants, because of threats, were induced to sign the contracts on June 11 and 14, it is clear from their testimony that they not only were not influenced by coercion or duress on July 2, when they made the deed and bill of sale and accepted the purchase price, but that they did so after seeking and accepting advice from their own attorney. This, even granting they had made a case of coercion as to the signing of contracts, constitutes a ratification of their former acts. It is also significant that

after signing the contracts appellants furnished an abstract of title and delivered it to Baker's attorney for examination.

It seems clear from this record, construing appellants' evidence most favorably to them and eliminating all testimony of appellees, appellants did not maintain their bill. If there was coercion at the time of the signing of the contract it cannot be said to have been operative at the time of the execution of the deed, and their evidence is not sufficient to justify a decree setting aside the deed. *Gregory* v. *Gregory, supra; Fitzgerald* v. *Allen,* 240 Ill. 80.

The decree of the circuit court was right and is affirmed.

*Decree affirmed.*