## Board of Education of Wolfe County et al. v. Rose et al.

## Board of Education of Wolfe County v. Same.

Dec. 20, 1940.

W. R. Prater, C. E. Lindon and Nickell & Nickell for appellants.

H. H. Ramey, O. J. Cockrell and Leebern Allen for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The facts disclosed by this litigation furnish a shining example of one manner in which the affairs of a County Board of Education should not be conducted.

For many years Bruce Rose, the father of appellee, Frank Rose, was superintendent of schools of Wolfe County. In the year 1938 he had been elected superintendent for a four-year term expiring June 30, 1942, but, owing to anticipated opposition of a newly elected county board, he resigned on December 7, 1938, and his son, Frank Rose, was elected to succeed him.

After the election of members of the County Board a dispute arose as to whether E. T. Kash, Jr., or Curtiss Booth was a legal member of the Board and a suit was pending in the Wolfe Circuit Court to decide this matter, though the record does not show the date of filing of the suit. The Board was divided into two factions, one of which, the Miller faction, was opposed to Frank Rose and his father, the other faction being favorable to them. On the decision of the law suit between Kash and Booth as to which of them was the legal member of the Board depended whether or not the complexion of the Board would be pro Rose or anti Rose—

if the decision of that suit should be in favor of Kash the Board would be anti Rose, while it would be pro Rose if Booth were the successful party. Earl Miller, chairman of the Board, is a brother-in-law of Kash and O. L. Miller, another Board member, is a first cousin to Earl Miller and to the wife of Kash. These members together with Mrs. Clark, who was not related, constituted what was known as the Miller faction while the remaining members of the Board composed the Rose faction.

On May 18, 1939, charges of misconduct were filed against Frank Rose. The Miller faction was responsible for the institution of these charges, one of the Board members actually signing them. No action had been taken on the charges up to June 12, 1939. On the latter date the action between Kash and Booth, to determine which of them was the legal member of the Board, was set for hearing before the circuit judge in an adjoining county. On this date the chairman of the Board called a meeting of the Board for the purpose of proceeding with the trial of the charges against Frank Rose and for the purpose of naming his successor if it should become necessary to do so. Notice of this called meeting was given to the Board members on June 12. Appellee, Frank Rose, did not attend the trial of the Kash v. Booth action in the adjoining county but his father, Bruce Rose, was there representing his interests. Through the intermediation of D. W. Howard, a brother of the then circuit judge, members of the Miller and Rose factions present for the trial agreed on a compromise of all matters between them in substantially the following terms: The action between Kash and Booth was to be dismissed and Booth was to file a disclaimer of his right to office as a member of the Board and was to file his resignation as such member and Kash was to be declared the legal board member. The charges against Frank Rose were to be dismissed and he was to resign as superintendent, his resignation to be effective October 1, 1940, on which date he was to be elected attendance officer of the Board. Bruce Rose who was acting as attendance officer of the Board was to resign and Rex Center, who also claimed to be attendance officer, was to file his disclaimer and resignation of the office. The appellant, Arnold Rose (who was not a member of the Rose faction but of the

Miller faction), who had been acting as assistant superintendent, was to resign his office and be elected attendance officer to serve until October 1, 1940, at which time he was to be elected superintendent in place of Frank Rose. Frank Rose was to supplement the salary of Arnold Rose as attendance officer by $33.33 per month from his salary as superintendent and this sum was to be deducted from his salary and paid to Arnold Rose while he was serving as attendance officer. When Frank Rose went. out as superintendent and became attendance officer on October 1, 1940, Arnold Rose, who was then to become superintendent, was to supplement the salary of Frank Rose as attendance officer by $50 per month and this amount was to be deducted from his salary by the treasurer and paid to Frank Rose. It was further agreed that during the remainder of the time Frank Rose was to serve as superintendent Arnold Rose would have the right to name one-half of the teachers in the county school system.

On the following day, June 13, at a meeting of the County Board the compromise agreed on was consummated by the Board by resolutions duly adopted except that no mention was made in the minutes of the agreement to permit Arnold Rose to nominate one-half of the teachers. However, the evidence discloses that all parties understood and agreed that this should be done.

After the consummation of the compromise agreement affairs apparently went very smoothly for some months, the parties complying with the agreement, but on May 4, 1940, Frank Rose notified the County Board in writing that the resignation theretofore tendered by him effective as of October 1, 1940, which had been accepted by the Board, was withdrawn and that he intended to serve the entire term for which he was elected. He demanded that the Board set aside the order accepting his resignation and this the Board refused to do.

On May 25, 1940, Frank Rose filed an action against the County Board and Arnold Rose in which he set out all the facts with reference to the compromise and the resignation tendered by him and alleged that the resignation was obtained by duress. The duress complained of was that the Board was composed of members who were openly hostile and unfavorable to him and who were threatening to remove him from office upon false

charges and that in order to avoid the humiliation of such action upon the part of the Board and to put an end to the confusion that existed he had tendered his resignation. He sought the right to withdraw his resignation and sought to compel the Board to permit him to serve until the expiration of the term for which he was elected.

Upon the trial of that action the chancellor adjudged the relief sought and ordered the Board to assemble and permit the withdrawal of the resignation and to set aside the order accepting it and to set aside the order electing Arnold Rose as county superintendent as of October 1, 1940, and directed that the Board permit Frank Rose to continue to act as superintendent for the remainder of the term for which he was elected.

Shortly after the filing of the latter action by Frank Rose charges of misconduct in office were again preferred against him and on the trial of those charges he was adjudged guilty by the Board and his office declared vacant. Frank Rose appealed to the circuit court from this action by the Board and that court adjudged that the action of the Board in removing Frank Rose was arbitrary and without competent credible evidence to support the charges and enjoined the Board from removing him.

From the judgment of the trial court in the first action the Board and Arnold Rose appeal and from the judgment of the trial court enjoining the Board from removing Frank Rose from office for misconduct in office the Board prosecutes an appeal, and both of these appeals are considered together.

The reason given by Frank Rose for entering into the compromise by which he resigned his office is that he had heard a rumor that the circuit judge was going to decide the Kash v. Booth action in favor of Kash; that such a decision would result in giving the Miller faction control of the Board; that he realized, with this situation existing, that the Board would remove him from office upon the charges, although they were without foundation, and that in order to save himself this humiliation he agreed to the compromise. He admitted that he knew the right of appeal to this court existed in the Kash v. Booth action and in his behalf if the Board removed him on trial of the charges but says that

he knew such litigation would be long and expensive and he did not desire to engage in it. Members of the Board assign as a reason for entering into the compromise the fact that they were advised by their counsel that it would take until October 1, 1940, to remove Frank Rose upon the charges filed against him and that they did not desire to permit him to remain in office for that length of time but yielded by reason of this advice given them.

There is some conflict of authority as to whether the resignation of an officer effective at a future date may be withdrawn prior to the effective date after the resignation has been accepted. See cases cited in note to the reported case of State v. Ladeen, 104 Minn. 252, 116 N. W. 486, in 16 L. R. A., N. S., 1058 and 46 C. J. 980. In our jurisdiction, however, it is held that such a resignation may not be withdrawn after its acceptance. Saunders v. O'Bannon, 87 S. W. 1105, 27 Ky. Law Rep. 1166. As a matter of fact the right of withdrawal of the resignation is predicated only on the fact that it was obtained by duress and we will consider the claimed right of withdrawal from that viewpoint.

It is contended for appellee that a resignation of a public office procured by duress is voidable and may be repudiated and we have little doubt that this is the correct rule especially where the duress is imposed by the authority having the duty of accepting or rejecting the resignation. We are cited by appellee to 46 C. J. 980, the text of which reads as follows:

"A resignation signed as an alternative to having charges made against the signer cannot be said to have been given by the party resigning of his own free will, and can be repudiated at any time."

Using this text as authority it is insisted that the facts of this case show that duress was imposed on appellee and that he was entitled to withdraw his resignation. If it be conceded that the cited text from Corpus Juris is a correct statement of the law, nevertheless it does not appear to us that the facts of the present case fall within it since it is clearly shown that no member of the County Board made any threats of any kind with reference to filing charges against the appellee or any statement that appellee would be removed as a result of the hearing on the charges. Appellee admits this to be true. The charges had been filed approximately a

month before appellee tendered his resignation. The Corpus Juris text relied on by appellee is based on the case of People ex rel. O'Connor v. Harding, 224 Ill. App. 198, in which a conditional resignation was obtained from a Civil Service employee by a threat of a superior officer to file charges against him and the resignation was accepted three years after it was tendered, under circumstances which did not justify a discharge of the employee. Appellee's position here is that if the circuit judge decided the Kash v. Booth action in favor of Kash a majority of the Board would be opposed to him and would proceed to remove him on the trial of the charges regardless of the evidence. He assumed in advance what the decision of the circuit judge would be on mere rumor to that effect and proceeded to act upon it. He was not justified in making up his mind in advance as to what the circuit judge would decide and in then claiming that duress was imposed upon him in obtaining the resignation which he tendered by reason of what he thought the decision would be and what he anticipated the Board would do about the charges—the presumption is that the circuit judge would, at least, decide fairly and honestly. If he could not get relief from erroneous and wrongful decisions in the lower tribunals, an appeal laid to this court which is certainly not subject to the local influences prevailing in the county. He was willing to make the compromise and resign rather than bear the burden of an appeal if he lost, an appeal which would have been a comparatively inexpensive matter, especially in the Kash v. Booth action. It seems clear to us that no such duress was imposed on appellee as entitled him to withdraw his resignation which had been accepted.

It is insisted for appellee, however, that the compromise agreement was opposed to public policy, at least those portions by which he was to supplement the salary of Arnold Rose as attendance officer and permit him to select one-half of the teachers. He also insists that the election of Arnold Rose as superintendent to take effect 16 months in advance was illegal and void. We readily agree with the contention that the compromise agreement was contrary to public policy and showed a complete disregard for the welfare of the school system and the rights of the public generally. It showed a willingness on the part of the Board to indulge in tactics that

would secure for those persons favored by the respective factions the utmost financial and political advantage that would be secured for them regardless of the ethics of the situation. But of this appellee cannot be heard to complain because he was as guilty as anyone else involved in the transaction. He entered into the agreement for the purpose of obtaining all he could, and what he thought was the best he could obtain for himself. He was willing to buy, sell, trade and barter in order to secure for himself the best possible terms in complete disregard to the schools of the county. He was equally as guilty as the other parties to the trade and the law will not intervene in his behalf but will permit him to lie in the bed he has made for himself.

We are not concerned with the validity of the agreement by appellee to supplement the salary of Arnold Rose nor with the agreement by Arnold Rose to supplement the salary of appellee when he was to become attendance officer. Those questions are not before us and are not decided. Nor are we concerned with the validity of the election of Arnold Rose as superintendent to take effect on October 1, 1940, sixteen months in advance of his election. The necessary effect of the decision of the trial court that appellee might withdraw his resignation was to continue him in office for the remainder of his term and thereby render ineffective the election of Arnold Rose. Our reversal of that judgment is based only on the fact that appellee had no right to withdraw his resignation. Such reversal necessarily operates to reverse also that portion of the judgment to the effect that Arnold Rose's election was void but does not operate as an adjudication of the validity of his election. That question is not properly before us.

Since we are reversing the judgment on the first appeal and holding that Frank Rose was bound by his resignation the question involved on the second appeal becomes moot and that appeal is accordingly dismissed.

In closing this opinion we think it appropriate to say that the facts reveal a situation such as to justify the Superintendent of Public Instruction in making an investigation to determine whether or not he should exercise the power vested in him by Section 4384-13, Kentucky Statutes, to recommend for removal board members, superintendents and other school officers guilty

of misconduct in office. Something of this character is needed to bring about a more healthy condition of school affairs in the county.

On the first appeal the judgment is reversed with directions to enter a judgment in conformity with this opinion and the second appeal is dismissed.

The whole court sitting except Judge Perry.