**D. C. KENNETT,** as Chief of the Fire Department of the City of Miami Beach, a municipal corporation; **CLAUDE A. RENSHAW** as City Manager of the City of Miami Beach, a municipal corporation, and **HARRY M. HICE, CHARLES QUIRK, CATCHINGS THERRELL** and **A. R. SMITH** of and constituting the Personnel Board of the City of Miami Beach, a municipal corporation; **CITY OF MIAMI BEACH,** a municipal corporation, v. **HARRY C. BARBER.**

31 So. (2nd) 44
June 10, 1947
Rehearing denied July 7, 1947

June Term, 1947
En Banc

*Ben Shepard,* for appellants.
*Cushman & Woodard,* for appellee.

TERRELL, J.:

Pursuant to Chapter 18696, Special Acts of 1937, the City of Miami Beach promulgated regulations governing the behavior of civil service employees of the City, one of which authorized the removal of any employee "guilty of conduct unbecoming an employee of the City."

Appellee was a member of the Fire Department. The City Manager and the Chief of the Fire Department being authorized to remove members of the department for infractions of the quoted regulations, removed appellee on the charge that "on April 21, 1946, at about the hour of 6 o'clock P. M. at or near 411 Michigan Avenue, in the City of Miami Beach, Florida, you were guilty of conduct unbecoming an employee of the City in that you were drunk and you did then and there grab and twist the arm of your pregnant wife and threw her to the ground and you did then and there beat, bruise and batter Adele Betancourt with your fists and your feet."

The Personnel Board of the City sustained the removal. On petition of appellee alternative writ of mandamus was directed to the City commanding it to reinstate him. A motion to quash the alternative writ was overruled. An answer was filed and a motion for peremptory writ, notwithstanding the answer, was granted. Appellants complied with the peremptory writ and have appealed from the final judgment, relying

on Sparkman v. State, 71 Fla. 210, 71 So. 34 and Polk County v. Johnson, 21 Fla. 577 to warrant the appeal after having complied with the peremptory writ.

The point for determination is whether or not a City Fireman who gets drunk and seizes the arm of his pregnant wife and throws her to the ground and then beats, bruises and batters a second woman with his fists and feet, is guilty of "conduct unbecoming an employee of the City," subjecting him to removal or discharge from the service, as contemplated by the applicable regulation.

There is no dispute about the facts recited. Appellee's defense is that he was not on duty at the time he committed the acts with which he is charged; that they do not relate to the duties of his employment; that they in no way affect his qualification to be employed as a member of the fire department or to perform the duties thereof, and that the mere fact that his superiors consider his "conduct unbecoming an employee of the City" does not make it so.

The defense so tendered requires an answer with a double aspect. (1) May the City inquire into and discipline or discharge one of its employees for unbecoming conduct committed while he was off duty? And (2) did the acts committed amount to "conduct unbecoming a city employee," subjecting him to discharge from the service of the City?

The defense that an employee's conduct while off duty is immunized from challenge by the city stems from a philosophy that had considerable support in this country prior to the day of the direct primary election. It was implicit in the doctrine, "The public be damned" which we thought had gone the way of the little red school house, the country doctor and the muzzle loading shot gun. We think the rule is now generally accepted that any one who seeks public employment or public office or who makes his living by dealing with the public or otherwise seeks public patronage, submits his private character to the scrutiny of those whose patronage he implores, and that they may determine whether it squares with such a standard of integrity and correct morals as warrants their approval. Cason v. Baskin, decided May 23, 1947, not yet reported.

By this yardstick the City of Miami Beach would certainly be authorized to inquire into the private character and conduct of a member of its Fire Department, and determine whether it met the standard required of those who seek employment at its hands. After they are employed, one's character is subject to inspection at all times. No business is required to keep one in its employ who is known to be stealing, cheating, gambling or who is guilty of other conduct embarrassing to or inimical to the interest of his employer. The first aspect of the answer disposed of, we are next confronted with the second aspect. Did the acts with which appellee as charged amount to conduct unbecoming a city employee? The charge must of course be specific and one that can be defended against.

We see no escape from an affirmative answer to this question.

In reaching its determination of whether or not one has been "guilty of conduct unbecoming a City employee," the City cannot act on an arbitrary or capricious judgment, neither must it act on a judgment shrouded in the fog of bias and skepticism. Such judgment must above all be one illuminated by the light of truth and justice. So far as the record discloses, the judgment under review meets this test. In fact, it is not claimed by appellee that it fails to do so.

We think it was competent for the City Manager, the Chief of the Fire Department and the Personnel Board to determine what constitutes "conduct unbecoming a City employee." Chapter 18695 clothes them with this power and they proceeded to make an unequivocal charge against him for which he was convicted. After all is said, it is a question of what standard of social ethics the City sees fit to exact of those who work for it, and if a member of the Fire Department becomes so enamoured of John Barleycorn, that he beats up his wife and a second woman who appears to have been a mere bystander, the City should not be forced to keep him against its regulations. We are aware of no right of an employee that rises above the right of a City to promulgate and enforce as high a standard of social and cultural conduct as its people want. Certainly this Court should not say nay

when the record reveals nothing more than an orderly attempt to enforce a reasonable standard of conduct on the part of city employees.

There is a well recognized general effort over the country at the present to conduct municipalities as business institutions. Any informed person knows this so we may assume that the Court knows it. There is not a bank, store, railroad office or business of any kind that does not look first to the moral equipment of every applicant it has for employment, and whether or not he is employed depends on that equipment. Not only that, but whether or not he keeps the job after he gets it depends on how well he keeps his private conduct squared with an approved standard of morals. It is the very bedrock on which sound democratic institutions rest. One cannot get and hold a job in a gambling enterprise without a certificate of good moral character.

The Fire Department is a very important arm of the City Government. It should be staffed by men who are dependable and feel their responsibility, else the city may become liable for heavy penalties. It is utterly foolish to contend that a man who gets under the influence of liquor and beats the women in the manner charged, meets all the requirements of a City fireman. It is equally as foolish to contend that such conduct has no relation to the duties of his employment or in no way affects his qualifications as a city fireman.

In the category of deeds and attributes that make a city a good place in which to live we do not find drunkenness and wife beaters listed. If the city wants to proscribe them it has a right to do so and no rule of the civil service may be invoked as a shield against them. That the city's thesis is supported by a social fact rather than a physical or a literal one is no less convincing.

"Conduct unbecoming an employee" is not susceptible of a definition that would serve the purpose every time a court is confronted with the charge. There must be some stability to the rule by which it is determined. At the same time it must be fluid enough to accommodate itself to the social aspirations of those who impose it. Perhaps the most delicate task of the juristic craftsman is that of reshaping old rules

of law to constant changes in the social structure. A rule grown stale and inept should not be permitted to paralyze the present. "The Earth in usufruct belongs to the living," said Jefferson. Neither should the law of today be over-burdened by what some of the historical school of juriscon-sults have chosen to call, "ancient law lumber."

From what has been said, it follows that the judgment appealed from must be and is hereby reversed.

Reversed.

BUFORD, ADAMS, and BARNS, JJ., concur.

THOMAS, C. J., and CHAPMAN, J., dissent.