FOX v. PIERCEY, Chief of the Fire Department

No. 7533.   Decided February 21, 1951.   (227 P. 2d 763.)

See 62 C. J. S. Municipal Corporations, Sec. 604. Resignation from public office, duress in connection with, see note 132 A. L. R. 975. See also, 17 Am. Jur. 902 (Sec. 25).

E. R. Christensen, Homer Holmgreen and A. P. Kesler, all of Salt Lake City, for appellant.

Rawlings, Wallace, Black & Roberts, and Dwight L. King, all of Salt Lake City, for respondent.

CROCKETT, Justice.

This appeal presents the question: Do the findings of the court below support its judgment that the resignation of the plaintiff from the Salt Lake City Fire Department was obtained by duress?

To answer that question, we proceed to a statement of the essential facts, then to a brief survey of the law of duress, and finally to an application of the law, to the facts.

These parties were before this court previously in a proceeding to review the action of the Civil Service Commission of Salt Lake City in setting aside the resignation of the plaintiff, Harold Fox, from the Fire Department of Salt Lake City, *Piercey* v. *Civil Service Commission*, 116 Utah 135, 208 P. 2d 1123. We recite only those facts material to the issues raised on this appeal.

.On the evening of August 5, 1948, Harold Fox, who was then a first-grade fireman in the Salt Lake City Fire Department, engaged in a party and some drinking at his home. Considerable disorder developed, during which he allegedly struck a neighbor woman, and his son fired a 22-rifle into the floor in an attempt to scare him into behaving himself. He was arrested, placed in the city jail and booked on a charge of drunkenness. Information concerning his conduct reached the newspapers that night and was published the next day. J. K. Piercey, Chief of the Fire Department, visited him while he was in jail and requested that he appear at the Chief's office the next morning, which he did after some delay. Piercey had summoned his four assistant chiefs to be present. The Chief informed Fox that he would have to discharge him or that he would be given the opportunity to resign if he so desired. Fox claims that upon his refusal to resign Piercey threatened him by stating: "If you do not resign, I will blast you and smear you in every newspaper in Salt Lake City. I will make it so miserable you can't get a job in the city." Piercey and the four assistant chiefs who were all present denied that any such threats were made.

Fox left the office of the Chief about 10:30 a. m., and was directed to return at 1:30. Upon his return at 1:30, the Chief handed him a letter of discharge. He left the office with this letter but returned in a few minutes and asked if he could still have the privilege of resigning. Piercey thereupon had a letter of resignation prepared, which Fox signed. The next day, after consulting with his attorney, he sent a letter to the Chief stating that he withdrew his resignation.

Fox was removed from the payroll and he appealed to the Civil Service Commission to be restored to his employment. At the hearing before the Commission, it did not call upon the Chief to show his reasons for discharging Fox, so

that issue was not tried, hence no finding was made as to the merits of his discharge. The issue which was tried was whether or not his resignation was effective. The Commission held that the letter of resignation was given under duress and was therefore void and ordered Fox restored to his position. The proceeding above referred to was brought in this court and as indicated in that decision, it was held that the Civil Service Commission was without jurisdiction to determine the issue raised relating to his resignation.

Fox then commenced this action in the district court alleging that his resignation was void because it was obtained by duress. In his complaint, he sets forth in exact words the statement attributed to Chief Piercey as previously quoted in this opinion; alleges those threats created great fear for the economic welfare of himself and his family; and, that while under the influence of such fear and duress, he signed the letter of resignation.

The trial court expressly rejected plaintiff's contention that Chief Piercey made the threats mentioned and found specifically to the contrary as follows:

"However, the court finds that defendant Piercey did not state to the plaintiff that 'he would blast and smear plaintiff in every paper in Salt Lake City' nor did defendant Piercey state to the plaintiff that 'he would make it so that plaintiff could not secure a job in Salt Lake City.' "

However, the court did find,

" * * * Defendant Piercey requested plaintiff to resign * * * and stated that unless he resigned he would be discharged; and said Piercey further informed plaintiff that his discharge would be accompanied by detrimental publicity and would seriously and detrimentally affect plaintiff's opportunities for obtaining employment in Salt Lake City and vicinity. * * * "

From these findings, the trial court determined that the resignation of plaintiff was procured while the plaintiff was frightened and alarmed and under the influence of duress and that the resignation was void.

As stated at the outset, the question which is squarely

presented here is, do the foregoing findings of the court support the determination that the resignation was obtained by duress?

Before considering that issue, it seems appropriate to explore briefly the subject of duress and the rule which we think should be applied.

There is, of course, no disagreement with the general proposition that a resignation would be voidable for duress the same as any contract. See cases cited at 132 A. L. R. 975. 13 Words and Phrases, Perm. Ed., p. 643, contains among many definitions of duress the following ■ general definition which seems to be satisfactory:

" 'Duress' is unlawful constraint whereby one is forced to do some act against one's will * * *."

Originally, duress was allowed as a defense in a very limited field as indicated in the following quotation from *Williston on Contracts* under the title, "Duress," Sec. 1601:

"Coke says that a man shall avoid his own act for menaces in four cases: '1. for fear of losse of life. 2. Of losse of member. 3. of mayhem, and 4. imprisonment; otherwise it is for fear of battery, which may be very light, or for burning of his house, or taking away, or destroying of his goods, or the like, for there he may have satisfaction by recovery of damages'; and these are the limits stated in subsequent early authorities. * * * It will be observed that threat of an ordinary battery is not included in Coke's list, and Blackstone says: 'A fear of battery or of being beaten, though never so well grounded, is no duress.' "

Under the subject of duress contained in 17 Am. Jur. 872, et seq., these ancient authorities are referred to. It is there indicated that the basis for finding duress has developed through certain distinct steps since the time above referred to. A broader and more liberal view allowed the defense where other acts or threats than those specified by Lord Coke could constitute duress, but these were required to be such as would overcome the will of a "brave man" or as sometimes stated, a "constant and courageous"

man. See note referring to this rule and its modification at *I Parsons on Contracts*, 9th Ed., 456, and 17 Am. Jur. 882. Later, this rule was relaxed in favor of the "ordinary reasonable man" or "man of ordinary firmness and determination" rule. *Brown* v. *Pierce*, 7 Wall. 205, 19 L. Ed. 134; *U. S.* v. *Huckabee*, 16 Wall. 414, 21 L. Ed. 457. The last stated rule had the approval of the courts for a long period of time and is quoted in many cases, including one of this court, *Ellison* v. *Pingree*, 64 Utah 468, 231 P. 827. At p. 883 of the 17 Am. Jur., supra, it is stated:

" * * * and duress is still often defined as that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary firmness"

and goes on to state in substance that under the modern rule duress is not to be tested by the nature of the threats but rather by the state of mind induced in the victim.

In *Ogle* v. *Freeman*, 150 Kan. 864, 96 P. 2d 670, 674, (11-15), the court called attention to an earlier case and said:

" * * * this court repudiated the proposition that *ordinary firmness* of mind should be included in the standard by which to test the existence of duress * * *.

" 'The courts now generally recognize that this definition is inaccurate for at least two specific reasons, viz.: First, experience has furnished no yardstick by which the firmness of the human will can be measured; and, second, even though that could be done, one having a weak will is as much entitled to the protection of the law as though his will were of ordinary firmness or of extraordinary firmness. When one uses the bludgeon of duress * * * and thereby gains a wrongful or unconscionable advantage, a court will relieve the victim * * * whether his will be weak * * * or * * * of ordinary firmness * * *.' "

This modern view is recited as the law in *Restatement of the Law of Contracts*, Vol. II, p. 939:

"The same threats may cause fear in one person and not in another. The test of what act or threat produces the required degree of fear is not objective. The threat need not be such as would put a brave man, or even a man of ordinary firmness, in fear. The question is rather, did it put one entering into the transaction in such fear as to preclude the exercise by him of free will and judgment. Age, sex, capacity, relation of the parties, attend-

ant circumstances, must all be considered. Persons of a weak or cowardly nature are the very ones that need protection. The courageous can usually protect themselves; timid persons are generally the ones influenced by threats, and the unscrupulous are not allowed to impose upon them because they are so unfortunately constituted."

*Williston on Contracts,* Section 1605, p. 4499, states:

"The tendency of the modern cases, and undoubtedly the correct rule is that any unlawful threats which do in fact overcome the will of the person threatened, and induce him to do an act which he would not otherwise have done, and which he was not bound to do, constitute duress."

To summarize, then, there have been four distinct phases in the development of the law regarding duress:

1. The ancient rule limiting it to certain specified acts;

2. The enlargement to include any threats, but requiring the "brave man" test;

3. The relaxing of this rule to apply the "man of ordinary firmness" test; and

4. The modern rule that any wrongful act or threat which actually puts the victim in such fear as to compel him to act against his will constitutes duress.

We approve this modern rule. It is obvious that applying this subjective test might theoretically degenerate to a point where a person desiring to avoid a contract might claim that practically any conduct of another put him in fear and overcame his will. It is necessary that there be some objective standard for determining when duress has been practiced. It must appear that the threat or act is of such a nature and made under such circumstances as to constitute a reasonable and adequate cause to control the will of the threatened person, *Ellison* v. *Pingree,* supra, 17 Am. Jur. 885, note 15 and authorities there cited.

Notwithstanding the fact that we approve this modern and liberal rule as a test of whether or not duress has been

practiced, under all the authorities, ancient and modern, the act or threat constituting duress must be wrongful.

*Williston on Contracts*, Sec. 1606, says:

"One element of the early law of duress continues to exist, however its boundaries may be otherwise extended. The pressure must be wrongful. * * *"

In the Restatement of the Law of Contracts above referred to, title "Duress," subsection g, it is stated: ■

"Acts or threats cannot constitute duress unless they are wrongful, even though they exert such pressure as to preclude the exercise of free judgment. But acts may be wrongful within the meaning of this rule though they are not criminal or tortious or in violation of contractual duty * * * ."

Applying these rules to the conduct of the appellant fire chief as found by the court, we are unable to see how Mr. Fox can avoid the effects of his resignation. It is true that Fox's testimony, as disclosed by the record, would support his claim of duress but we are limited to a consideration of the findings made by the court.

In the first place, the only claim of duress made by Fox, both in his complaint and his testimony, was that the threats which he alleges were made by Piercey, as set out at the beginning of this opinion, were what put him in such fear as to overcome his will and constitute duress. As before recited, the court expressly found these threats were not made, which means the court found the cause of duress claimed by Fox did not exist.

The findings the court did make that Piercey informed Fox that he would be discharged and that his discharge would "be accompanied by detrimental publicity and would seriously and detrimentally affect Fox's opportunity for obtaining employment," neither state nor fairly imply that Piercey would do anything beyond the act of discharge to publicize Fox's misconduct or discharge. Assuming he had done so, he would not have been threatening to give the newspapers any information concerning the respondent

which they did not already possess, except the fact of his discharge, and the discharge of a public officer would be public information anyway.  Piercey merely advised Fox of what the latter knew, quite as well as Piercey did, would have been the inevitable result of his discharge.  It is uniformly held that mere persuasion or advice does not constitute duress, *Ellison* v. *Pingree,* supra; *Prontzinski* v. *Baker,* 364 Ill. 451, 4 N. E. 2d 862.

We now consider whether Piercey's threat of discharge can properly be termed wrongful.  A continuation of the reference hereinabove quoted, Restatement of Contracts, Section 492(g), indicates that although the threat need not be criminal, tortious or in violation of contractual duty, it must at least be wrongful in the moral sense.

While it may be conceded that there has been no determination on the merits as to Fox's misconduct, and we therefore are not considering the question as to the sufficiency of grounds for threatened discharge, the record in this case clearly shows that he had been guilty of some unseemly conduct the night before, for which he had been placed in jail, booked on a charge of drunkenness, and that this information was already in the hands of the newspapers.  There is also evidence of misconduct of a similar nature on a prior occasion.

It is true that these occurrences were while Fox was off duty, but they reflect not only upon himself, his character, and his suitability as an employee, but also upon the whole department and the city government.  The chief could certainly consider such conduct in making a determination concerning discharge.  See *Kennett* v. *Barber,* 159 Fla. 81, 31 So. 2d 44, and we say this advisedly with the thought that it is not inconsistent with *Thompson* v. *Civil Service Commission,* 103 Utah 162, 134 P. 2d 188.

Under the circumstances, it could hardly be said in fairness that appellant's threat to discharge respondent was

wrongful, such as if it had been wholly capricious and arbitrary or if the threat had been made for some ulterior or improper purpose.

It is not uncommon for an administrative officer who finds it necessary to remove an employee to give the employee an opportunity to resign rather than be discharged, as was stated in the Thompson case just referred to above. This is indulging a kindness to the employee in protecting him and his work record. It would be a dangerous doctrine to hold that to offer an employee his choice of resigning or accepting a discharge would amount to such compulsion that the employee could avoid his resignation for duress. If such were the law, then any time an employer mentioned the subject of discharge to his employee, he would have to go ahead and discharge him, and could not give the latter the choice of resigning because the resignation would be voidable.

Of the cases cited, where the threat of discharge was the only ground of duress, it was held that the threat was insufficient to void the resignation, *Kramer* v. *Board of Police Commissioners*, 39 Cal. App. 396, 179 P. 216; and *Board of Education* v. *Rose*, 285 Ky. 217, 147 S. W. 2d 83, 132 A. L. R. 969; *People ex rel. Wallace* v. *Diehl*, 50 App. Div. 58, 63 N. Y. S. 362, affirmed in 167 N. Y. 619, 60 N. E. 1118. None of the cases cited hold that a mere threat of discharge as an alternative to resignation constitutes duress. A discussion of the individual cases pointing out the additional facts and the distinctions between those cases and the instant one would serve no useful purpose.

In view of the fact that this case is determined upon the considerations discussed above, it is unnecessary to resolve the problem suggested by appellant regarding the lapse of time between the alleged threats and the presentation of Fox's resignation. We do not disagree with the contention that, even if duress had

been practiced, an act done after sufficient time had elapsed for fear to disappear would not be voidable for duress.

Our conclusion is that the findings of the court are insufficient to support the determination that Fox's resignation was procured by duress. The judgment is reversed and the cause remanded for dismissal. Costs to appellant.

WADE, LATIMER, and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur in the result.

I see merit in the so-called modern rule that any threat which actually puts the victim in such fear as to compel him to act against his will constitutes duress but it has reaches which ramify into the realm of psychology and, in its practical application, may encounter difficulties of discernment between the sly and the timid. The brash and robust mind may easily later on take a sensitive hue. "The devil a monk would be" if it might aid recovery.

The sort of contemplation this question requires is the type one might indulge in while reading Aristotle's "Ethics." Time forbids the sort of consideration it merits.

It is not necessary for us to determine at this time whether we approve the modern rule of subjective test, that is, its effect upon the person to whom the threat is directed because the opinion correctly holds that under the findings of the lower court the words used by Piercey were admonitory and advisory only. The court did not find that the statement by Piercey to Fox that unless he, Fox, resigned, Piercey would be compelled to discharge him was made for an ulterior purpose. Being consistent with Piercey's duty it must be so interpreted rather than to read into it a wrongful motive.

The part about the effect of the publication of Fox's discharge on his future welfare as found by the court must

be taken as advisory designed to place before Fox that aspect for consideration in making his decision as to whether to choose resignation or subject himself to discharge. That an employer may place before the employee the employer's idea of the various effects which may flow from the decision of the employee may be an attempt by the employer to persuade such employee to choose the method of a voluntary severence of the employer-employee relationship because such choice would be easier on the employer; but coupled with that motive may be the one also of making it easier for the future of the employee. We cannot probe the mind of the employer in order to determine such niceties of distinction in motives and the comparative weight which each may have had with such employer.

Suffice it for us that there was a substantial reason for discharge or at least that the Chief honestly concluded that there was. If the Chief told Fox of his intention to discharge Fox but did not go beyond a statement of that intention except a suggestion or even advise that Fox should resign and thereby avoid discharge, it cannot be held to be a threat and duress would not be present despite a secret motive on the part of the Chief, if any. More than the above is not necessary to the decision. Consequently, I concur in the result.