**UNITED STATES ex rel. ANDREACCHI v. CURRAN, Commissioner of Immigration.**

District Court, S. D. New York.
March 22, 1926.

F. R. Serri, of Brooklyn, N. Y., for relator.

Emory R. Buckner, U. S. Atty., of New York City (Charles L. Sylvester, Asst. U. S. Atty., of New York City, of counsel), for respondent.

GODDARD, District Judge.

The relator, Basil Andreacchi, has been ordered deported by the Commissioner of Immigration on the ground that he, an alien now in the United States, has been sentenced more than once for crimes involving moral turpitude, and comes within section 19 of the Immigration Act of February 5, 1917 (8 USCA § 155).

From the record it appears that the relator, a native of Italy, entered the United States with his parents in 1905, when he was two years old.

On September 13, 1918, in the court of special sessions, he was sentenced to the New York Reformatory for a maximum period of three years upon conviction of carrying a concealed weapon; on July 2, 1920, in the United States District Court, Southern District of New York, he was sentenced to two years in the United States Penitentiary on the conviction of violation of the Harrison Anti-Narcotic Law of December 17, 1914 (38 Stat. 785 [26 USCA §§ 211, 691–707]); on May 5, 1923, he was sentenced by the court of general sessions, New York, to four years on the conviction of the charge of burglary, third degree.

The material parts of Section 19, Act Feb. 5, 1917 (8 USCA § 155) read as follows: " * * * any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of * * * moral turpitude, committed at any time after entry; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

Section 19 provides for deportation of an alien who is sentenced to imprisonment for a year or more upon conviction of a crime involving moral turpitude committed within five years after his entry into the United States. It also provides for deportation of a person sentenced more than

once for crimes involving moral turpitude after entering the United States.

■ It is not claimed that this relator committed any crime within five years after his coming to America, but that he has been sentenced more than once upon conviction of crimes involving moral turpitude. Has this alien been sentenced for two such crimes? It is conceded that the sentence for burglary does involve moral turpitude. It has been held that a sentence for carrying concealed weapons does not involve moral turpitude. Ex parte Saraceno (C. C.) 182 F. 955. I fully agree with this decision and my reasons therefor are included in the discussion which follows relative to the violation of the Harrison Anti-Narcotic Act.

■ As to the violation of the Harrison Anti-Narcotic Act, under said section 19 (8 USCA § 155), I may only consider the crime for which the relator was sentenced. I must distinguish between the crime for which he was sentenced and the acts which may have and probably did follow as a result of that crime. Very likely his omission to comply with the Harrison Anti-Narcotic Act enabled him to traffic in narcotics, and to commit acts which did involve moral turpitude; but I cannot now take into consideration those acts and their possible results. I must confine myself solely to determining whether the violation of the Harrison Act itself involves moral turpitude. In Linder v. United States, 268 U. S. 5, 45 S. Ct. 446, 448, 69 L. Ed. 819, 39 A. L. R. 229, it was stated that "the declared object of the Narcotic Law is to provide revenue." The constitutionality of the Harrison Act originally was sustained by the Supreme Court in United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493, on the ground that it was a revenue act. The crime consists not in engaging in narcotic traffic, but in merely failing to register, pay a tax and comply with certain regulations of the Internal Revenue Commissioner. It is to be regarded solely as a revenue act whatever incidental results might accompany its enforcement. No case has been brought to my attention, nor do I find any which holds that the violation of a revenue or licensing statute involves moral turpitude.

The fact that the thing may be done, providing a tax is paid to the government, indicates that the act itself does not involve moral turpitude. Undoubtedly, a person might be punishable under the Harrison Anti-Narcotic Act and not be guilty of moral turpitude, as, for instance, where there is a failure to comply with it, not because of any intention to furnish addicts with narcotics, but merely because of an oversight or lack of information regarding the statute. There may be a violation of the Harrison Anti-Narcotic Act, although actual willful or wrongful intent are absent and these elements are, in my judgment, necessary for a finding of moral turpitude.

Therefore, it does not appear that the relator has been convicted of more than one crime involving moral turpitude since his entry into the United States, and it is unnecessary to consider the other questions raised upon this writ.

Accordingly, the writ must be sustained and the relator discharged, and an order to that effect may be entered upon the usual notice.