ANTONIO MORALES MERCED, Petitioner and Appellant, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, MANUEL A. MOREDA, JUDGE, and RACING BOARD OF PUERTO RICO, Respondents and Appellees.

No. CE-64-27.      Decided March 30, 1966.

412

*José Aulet* for petitioner. *Germán Rieckehoff* and *Elí B. Arroyo* for the Puerto Rico Racing Board.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The sole question raised in this appeal is whether the felony of bearing a loaded firearm, defined in § 8 of the Weapons Law, implies moral turpitude.

The "Puerto Rico Racing Act"—No. 149 of July 22, 1960 —in § 7, subdivision 2, grants the Racing Administrator certain powers, among others, to grant, suspend, or cancel the licenses of horse owners, jockeys, trainers, and grooms. The exercise thereof is conditioned in subdivision 2 as follows:

"The Racing Administrator shall not license any person who has been convicted of violation of the laws relative to traffic in,

possession or use of narcotic drugs, or of any felony involving moral turpitude."[1]

On April 22, 1962, professional jockey Antonio Morales Merced, in a public place in Río Piedras, fired a shot at his sweetheart, Gladys Martínez Nieves, with a short firearm[2] inflicting on her a serious wound; he fired another shot at Carmen Delia Martínez Nieves, Gladys' sister, without hurting her.

As a result of these facts Morales Merced was finally accused in the Superior Court, San Juan Part, of: (1) aggravated assault and battery; (2) aggravated assault; (3) minor violation of § 6 of the Weapons Law of Puerto Rico —having in his possession a firearm without having previously obtained a license therefor— (4) violation of § 32, subdivision (b) of said Weapons Law—"intentionally although without malice" aiming at any person with any firearm—and, (5) of violation of § 8 of said law, consisting in "bearing a loaded pistol, without having a license therefor issued by the Superior Court . . . or by the Chief of Police of Puerto Rico . . .". This last charge involves a felony.

On March 22, 1963, Morales Merced voluntarily pleaded guilty to all the offenses charged; accordingly, the trial court

---

[1] Pursuant to the Horse Racing Regulations approved February 23, 1962, those licenses shall not be granted or renewed to any person who:

"(1) .    .    .    .    .    .    .    .

"(2) .    .    .    .    .    .    .    .

"(3) Has an unfavorable reputation in the community in connection with his moral conditions.

"(4) Has been convicted of a felony implying moral turpitude." 15 R.&R.P.R. § 186–225.

The Administrator may also deny them "if, in his judgment and opinion the temperament, reputation, experience and ability of the applicant do not deserve the granting of said license or if the granting thereof might be detrimental to the horse racing sport for the public interest." 15 R.&R.P.R. § 186–224.

[2] Of the five charges, three describe the firearm used as a pistol; the other two as a revolver.

found him guilty and convicted him of the first four charges of misdemeanor and also of felony for the violation of § 8 of the Weapons Law.

The charges were sent to the probation officer for examination and report. The latter rendered a report favorable to Morales Merced. On August 20, 1963, he was ordered in the felony case to serve one to three years in the penitentiary. In the four misdemeanor cases he was ordered to serve sentences concurrently with that of the felony case. On the same date, after seeing that favorable report, the Superior Court ordered the suspension of the sentences and the defendant was placed on probation under the provisions of Acts No. 259 of 1946 and No. 177 of 1949.

In December 1963 Morales Merced requested the Racing Administrator to renew his jockey's license for the year 1964. On the 16th of said month said officer ordered the former to appear before him to show cause why his application for renewal should not be denied. The order to show cause was grounded on the following premises:

"WHEREAS: Antonio Morales Merced has applied for the renewal of his jockey's license for the year 1964;

"WHEREAS: Antonio Morales Merced has been convicted of offenses involving moral turpitude, according to judgments rendered on August 20, 1963 by the Superior Court, San Juan Part;

WHEREAS: The temper and reputation of Antonio Morales Merced do not deserve the granting of a jockey's license.;

WHEREAS: The granting of a jockey's license to Antonio Morales Merced is contrary to the best public interest and might be detrimental to the horse racing sport;

WHEREAS: Antonio Morales Merced is barred by law to possess a jockey's license. . . ."

A hearing to show cause was held on January 30, 1964. Counsel for the Racing Administrator offered as the sole evidence against the renewal certified copies of the judg-

ments rendered in the aforementioned cases. In support of the application for renewal Morales Merced's attorney offered to present "a report of the Probation Officer and a memorandum."[3]

On April 1, 1964 the Racing Administrator issued an order denying the renewal on the ground "that on August 20, 1963, jockey Antonio Morales Merced was convicted of felony involving moral turpitude."

---

[3] The so-called report was presented on the following March 24th and it consists of a letter which says:

"COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
SAN JUAN PART

March 13, 1964

"Mr. Agustín Mercado Reverón
Racing Administrator
Racing Sport Administration
Río Piedras, Puerto Rico

Re: Antonio Morales Merced
S. J. 1513

"Honorable Sir:

"Antonio Morales Merced was referred to us for investigation and report in relation to two counts of assault to commit murder reduced to aggravated assault and battery (two counts) and violation of §§ 6 and 8 of the Weapons Law, plus violation of § 32 subdivision B of said Weapons Law.

"These offenses were committed on April 22, 1962 in Río Piedras.

"On August 20, 1963, after carrying out an investigation, the court granted him the benefits of the Suspended Sentence Act. He shall enjoy said benefit for a period of three (3) years eight (8) months, which shall expire on April 20, 1967.

"During the investigation it was found that Morales Merced has very nice friends in the vicinity where he lives and his behavior is satisfactory. He was favorably recommended by the majority of the persons interviewed.

"It was found that this is the first time he was ever convicted of any offense.

"During the probation period he has responded favorably, he has attended his interviews with the Probation Officer and has not been involved in subsequent difficulties.

"Morales Merced shall remain on probation as long as he does not violate the laws in force in Puerto Rico and the conditions of his pro-

The jockey appealed before the Racing Board. The latter affirmed that order on the basis that "the offense of bearing weapons in its felonious provision implies moral turpitude." Reconsideration of said order was requested and it was flatly denied.

Morales Merced filed a timely petition for certiorari in the Superior Court, San Juan Part, to review the order of the Racing Board. Said court flatly refused to review it. Therefore on motion of Morales Merced, we issued a writ of certiorari.

As the sole assignment of error he alleges that the respondent court erred in denying the issuance of the writ, and the Racing Board erred in affirming the order of the Racing Administrator grounded on the fact that the felony of which he was convicted implied moral turpitude.

■ In our opinion petitioner is right. The felony for which he was convicted does not imply moral turpitude. Let us see.

Section 8 of the Weapons Law which defines it reads:

"Carrying or transporting pistol, etc., and ammunition.

"Any person bearing, carrying, or transporting any loaded pistol, revolver, or other firearm, or who bears, carries, or transports any pistol, revolver or other firearm, while at the same time bearing, carrying, or transporting ammunition which may be used for discharging such pistol, revolver or other firearm, without having a license to carry weapons issued as hereinafter provided, shall be guilty of a felony."

---

bation, and his behavior is moral.

"It would be a great pleasure for us if he is granted the renewal of his license.

Respectfully yours,

(signed) *Sonia Carlo Bouet*
Sonia Carlo Bouet,
Adult Probation Officer."

■ Under the section copied above an information must allege, as an essential requisite, and in order to charge a prima facie offense, that defendant failed to have a license issued to bear the loaded weapon in question. Failure to allege that integral element of the offense renders the information fatally defective. Likewise, in the case of the simple possession, bearing, carrying or transportation of any pistol, revolver, or any unloaded firearm and without at the same time possessing, bearing, carrying or transporting ammunitions which may be used for discharging it.[4] So that if a license issued according to law is possessed, for each one of those actions, the possession, bearing, carrying or transporting of the firearm is not prohibited; it is lawfully permissible. Its validity depends on the compliance with the requisite of obtaining the license.

■ It is true that the jockey was convicted of a felony as a result of bearing a firearm without a license therefor. But our Racing Act does not authorize the Racing Administrator to deny a licence to an applicant who may have been convicted of any felony, as the Racing Board seemed to believe. He was only authorized in relation to "any felony implying moral turpitude."

The term "implying moral turpitude" is not defined or explained in that Act. We find it, although with slight variations in its expression, as the test used for disciplinary procedures established by statutes regulating the practice of professions, such as law, 4 L.P.R.A. § 735; or the behavior of officials or public employees, 3 L.P.R.A. § 556. Rule 96 (d) of Criminal Procedure points out the requirements for a person to be eligible to act as juror, among others: Not to have been convicted of a felony or any other offense which involves moral turpitude.

---

[4] *People* v. *Rivera*, 73 P.R.R. 402, 406 (1952).

Moral turpitude, in case of attorneys, consists of, as decided in *In re Disbarment of Coffey*, 123 Cal. 522, doing anything contrary to justice, honesty, modesty, or good morals as the crime of extortion or embezzlement. In *Jordan v. De George*, 341 U.S. 223, 229 (1951) it was decided that any crime where fraud was a basic ingredient had always been considered as involving moral turpitude.

■ .In general, we consider it as a state or condition of the individual, consisting of an inherent deficiency of his sense of morale and righteousness; of the person's disregard for the respect and security of the human life, and all his actions are essentially wrongful, deceitful, fraudulent, immoral, mean in nature, and consequently harmful.

The *Diccionario de la Lengua Española*, in its eighteenth edition says that the word *"Depravar"* means to vitiate, adulterate, corrupt, and that *"Depravadamente"* means pervertedly, with extreme malice.

The *Diccionario Terminológico de Ciencias Médicas*, 8th edition Salvat, Barcelona, defines *Depravación* as follows: "(from to deprave, vitiate). Deterioration, a change for the worse, perversion, chiefly with reference to sensations."

■ An act which is permissible and lawful provided a certain requirement of the law is met, such as the bearing of loaded or unloaded firearms, may not be considered as implying moral turpitude when it is performed without complying with the requirement of obtaining the license. However, it should be considered illegal and wrongful because it is prohibited by law, and not because it is an inherently immoral act. If it were, positive law would never permit it in any manner whatsoever.

In the aforecited case of *People v. Rivera* we noted that the Weapons Law in force was inspired by the law existing in the State of New York and that §§ 7 and 8 of our Law are similar to §§ 1897(5) and 1897(5.2) of the Penal Code

of said state, which also contain the phrase "without a written licence therefor, issued as hereinafter prescribed." Construing said § 1897, in the case of *Ex Parte Saraceno*, 182 Fed. 955, 957 (Circuit Court, S.D. New York, 1910) petition for habeas corpus to obtain the release of an immigrant arrested under the Immigration Law it was decided that petitioner's conviction of violation of said § 1897 is no evidence whatsoever that he is likely to become a public charge, or that violation—committed in transporting a revolver—involved moral turpitude. It was likewise decided in *United States ex rel.; Andreacchi* v. *Curran*, 38 F.2d 498 (1926).

The facts which brought about the prosecution and conviction of felony—consisting in the bearing of the loaded firearm without a license therefor—were material in considering the petition of renewal. The other facts referring to misdemeanors were excluded by law and should have no bearing whatsoever in the case.

On the date on which Morales Merced requested the renewal, the Superior Court, pursuant to the aforecited laws of 1946 and 1947, had determined "that no aspect of that person's life shows that there is necessity to imprison him . . . in order to attain his reformation or rehabilitation . . . as a means of adequate protection of the community." On the other hand, the uncontroverted information supplied to the Racing Administrator by Mrs. Carlo Bouet in her letter of March 13, 1964, was sufficient evidence of the good behavior of the jockey, who probably, under a fit of rage, fired at his sweetheart whom he later married.

The Racing Administrator erred in deciding that jockey Antonio Morales Merced had been convicted of a felony "involving moral turpitude"; the Racing Board also erred in affirming such order, and, furthermore, the Superior Court, San Juan Part, erred in denying the issuance of the writ of certiorari.

■ Since the case deals with annual licenses it is not proper to order the Racing Administrator to grant petitioner the renewal of the jockey's license for the year 1964. For that reason, the present appeal has not been rendered abstract, theoretical, or academic. Our decision herein to the effect that the felonious violation of § 8 of the Weapons Law does not imply moral turpitude will not be effective in relation to the controversy which arose in 1964 as a result of petitioner's application for the renewal of his license for that year. However, that determination has its immediate impact and practical usefulness in relation to any application made by petitioner to the Racing Administrator to obtain his jockey's license for the present or future years, and with respect to the continuous and repeated process of granting or denying licenses to hundreds of persons related to the racing sport who might find themselves in identical situations with that of petitioner.[5]

The orders challenged will be reversed.

---

[5] In 2 Am. Jur.2d Administrative Law, § 573 says:

"A subsequent event renders a controversy moot where it precludes a court from granting effective relief, if any, to the aggrieved party. But intervening events do not render a controversy moot where it is still possible for the reviewing court, if it should decide the case in favor of the party seeking relief, to grant him some effectual relief, and, in particular instances, it has been held that a question was not moot where there existed the possibility of further action by the administrative agency. In some cases, the interest of an affected party or of the public in an adjudication on the merits, despite its ineffectiveness with respect to the controversy presented before the court, has prevailed over technical considerations, particularly where short-term administrative orders

---

are involved, the courts emphasizing that the questions to be decided are continuing and that the right of judicial review should not be defeated by short-term orders capable of repetition, yet evading review."