**UNITED STATES ex rel. DE LUCA**
v.
**O'ROURKE.**
No. 8777.

United States District Court
W. D. Missouri, W. D.

Dec. 5, 1953.

Hunt C. Moore and R. T. Brewster, Kansas City, Mo., for relator-petitioner.

Edward L. Scheufler, U. S. Atty., Horace Warren Kimbrell, Kansas City, Mo., and William O. Russell, Asst. U. S. Attys., Joplin, Mo., for respondent.

REEVES, Chief Judge.

The relator-petitioner seeks his discharge from the custody of the respondent upon the ground that the order of deportation heretofore made by the respondent is invalid and void for sundry reasons. The reasons relied upon by counsel for the relator-petitioner will be discussed more fully hereinafter.

It appears from the undisputed facts that the relator-petitioner, is an alien, having first entered the United States from Italy, where he was born, in 1910 and that his last entry, after a visit to Italy, was on October 25, 1934. He was registered as an alien on September 5, 1940, and was twice convicted of violating narcotic laws in December, 1942. One of the convictions was by a jury and the other upon a plea of guilty.

It is the contention of the relator-petitioner that, at the time of his convictions in 1942, he had an understanding and an agreement with the government through the office of the United States District Attorney that he would not be deported if an appeal was not taken in one of the cases wherein he was convicted. Pursuant to such alleged agreement, and upon the recommendation of the United States District Attorney, and what was then thought to be in accordance with the then Section 155, Title 8 U.S.C., the writer of this opinion, the presiding judge in the cases, made a recommendation to the Attorney General that such alien should not be deported. Said Section 155 (now repealed) contained the following:

"(a) * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of

imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported in pursuance of this chapter; * * *."

It does not appear from the evidence submitted that any agreement was in fact made by the government through the United States District Attorney's office, but that an agreement was made that a recommendation both as to the term of imprisonment and as to an order of no deportation would be made by an Assistant to the United States District Attorney. Such recommendation was made and the judge, the author of this opinion, accepted such recommendation and imposed two sentences of three years each in prison to run concurrently and, in addition, made the recommendation to the Attorney General that the alien (the relator-petitioner) should not be deported.

It is now the contention of able counsel for the relator-petitioner that these were binding agreements and that the order of deportation heretofore made is invalid, null and void.

1. The statute upon which the government proceeds, Section 1251(a), Title 8 U.S.C.A., is as follows:

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported * * *

* * * * * *

"(11) * * * who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, * * *."

Quite clearly the order of the respondent is within the provisions of the law and the order challenged is based upon this express and very clear provision of the Immigration Law and should be enforced unless estopped as contended by the relator-petitioner, by the order or recommendation heretofore made on his behalf at the time the sentences were imposed or within 30 days thereafter.

2. Adverting to the excerpt from former Section 155, supra, it is substantially ·re-enacted in the new law, paragraph (b) in said Section 1251, as follows:

"The provisions of subsection (a) (4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply * * * (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter."

It will be noted that this provision is broader than similar provisions in Section 155. Parenthetically, it should be also stated that there is no evidence that the state authorities were notified when a recommendation was made that the relator-petitioner be not deported.

3. Noting the provisions of paragraph (a)(4), Section 1251, to which reference is made, the context is as follows:

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General be deported who—

* * * * * *

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of

whether the convictions were in a single trial; * * *."

This provision relates to a crime involving moral turpitude as was the provision in former Section 155 of this title. However, paragraph (11), supra, relates solely to violations of the narcotic law. This is wholly apart from crimes involving moral turpitude.

It was held by the Court of Appeals, 9th Circuit, where the proceeding was identical with that here, in Hampton v. Wong Ging (Hampton v. Wong Dick), 299 F. 289, loc. cit. 290, that:

"Whether or not the offense of which the appellees were convicted involved moral turpitude is not disclosed by the record. It informs us only that the appellees were each convicted of 'having opium in his possession.' If this was the sum total of their offense against the laws of the United States, they were innocent of violation of law, and on that ground we would be justified in affirming the judgment. * * * But if the violation of the Narcotic Act, of which the appellees were convicted, is improperly designated in the record here, it still remains that we have no means of knowing that the offense of which they were convicted was not one of *such an aggravated character as to involve moral turpitude*. In brief, the record does not show that the court below was in error in discharging the appellees from custody, and the appellant has not presented cause for reversal of the judgment." (Emphasis mine.)

In the case of United States ex rel. Andreacchi v. Curran, 38 F.2d 498, the District Court for the Southern District of New York specifically held that the violation of the Harrison Anti-Narcotic Act, 26 U.S.C.A. §§ 2550 et seq., 3220 et seq., by an alien did not involve moral turpitude within the meaning of the then Immigration Act providing for the deportation of persons sentenced more than once for crimes involving moral turpitude.

4. And, in considering the identical provisions of the law, the District Judge for the Eastern District of Louisiana, in United States ex rel. Marcello v. Ahrens, 113 F.Supp. 22, loc. cit. 26, said, in substance, that it was permissible to enforce an ex post facto law in relation to the conduct of aliens since the proceeding was not in a criminal case.

It would follow from the foregoing that the courts have not only held that violation of the narcotic law is a crime not involving moral turpitude, but, by express enactment, the Congress put an identical interpretation upon such offenses.

The recommendation made by the United States District Attorney, followed by the recommendation of the judge who presided in the cases, that an order of deportation should not be made, was a recommendation not authorized by law and should have no force and effect here. And since it was an invalid recommendation, no provision of the present law would have the effect to give it life and force and effect.

5. Other questions raised by diligent and able counsel need not be noticed for the reason that under the authority of Heikkila v. Barber, 345 U.S. 229, loc. cit. 236, 73 S.Ct. 603, loc. cit. 606, the court said, in relation to deportation cases:

"* * * *the function of the courts has always been limited to the enforcement of due process requirements. * * * We hold that deportation orders remain immune to direct attack.*" (Emphasis mine.)

And, even in Bridges v. Wixon, 326 U.S. 135, loc. cit. 149, 65 S.Ct. 1443, loc. cit. 1450, 89 L.Ed. 2103, the court said:

"In these habeas corpus proceedings we do not review the evidence beyond ascertaining that there is some evidence to support the deportation order."

It follows that the relator-petitioner is not entitled to his discharge and the application therefor will be denied and the petition dismissed