STATE EX REL. GUDLIN, Appellant, v. CIVIL SERVICE COMMISSION OF CITY OF WEST ALLIS, Respondent.

*February 1—March 30, 1965.*

78

For the appellant there were briefs by *Goldberg, Previant & Uelmen* and oral argument by *John S. Williamson, Jr.,* all of Milwaukee.

For the respondent there was a brief and oral argument by *William T. Schmid,* city attorney of West Allis.

FAIRCHILD, J. Sec. 66.19 (1), Stats., empowers any city or village to establish "a civil service system of selection, tenure and status. . . ." Such a system is required to include a civil service board or commission, but the statute imposes no other requirements pertinent to this case.[1]

Sec. 2.47 of the ordinances of the city of West Allis established a civil-service system and a commission. Sec. 2.47 (3) authorizes the commissioners to adopt "such rules and regulations to carry out the provisions of this section as in their judgment shall be necessary to secure the best service for the city and each department affected thereby. . . ."

Sec. 2.47 (7) is entitled "Demotion and Dismissal Procedure." It provides in part:

"(a) Whenever a person possessing appointing power in the city believes that an officer or employee in the classified service in his department has acted in such a manner as to show him to be incompetent or to have merited suspension, demotion or dismissal, he shall report in writing to the civil service commission, setting forth specifically his complaint, and may suspend the officer or employee at the time such complaint is filed."

---

[1] Much more detailed provisions appear in statutes providing for civil service systems for the city of Milwaukee, sec. 63.18, Stats., *et seq.,* for counties, secs. 63.01–63.17 (see also sec. 59.07 (20)), and for state employees, secs. 16.01–16.32.

Provision is also made for notice to the employee of the charges and of a hearing thereon. Sec. 2.47 (7) further provides:

"At the termination of the hearing, the commission shall determine whether the charge is well founded and shall take such action by way of suspension, demotion, discharge or re-instatement, as it may deem requisite and proper under the circumstances and as its rules may provide . . . The decision of the commission shall be final and conclusive upon both the city and the accused."

The commission has adopted a set of rules and regulations. Rule X is entitled "Discharge," and provides, in part:

"The following will be considered as causes for discharge, suspension or reduction although discharges, suspensions or reductions may be made for other causes:
"That an officer or employee in the classified civil service
"(a) Has been convicted of a criminal offense or of a misdemeanor involving moral turpitude; or
"(b) Has been guilty of an immoral or criminal act . . .
"(e) Has been guilty of any conduct unbecoming an officer or employee of the City; or
"(j) Is wantonly offensive in his conduct or language towards the public or towards City officers or employees. . . ."

The city attorney conceded that the commission should not apply (a), above, because the convictions of ordinance violations were not convictions of criminal offenses or misdemeanors involving moral turpitude. The commission concluded that appellant's conduct constituted cause for discharge under (b), (e), and (j). It should be observed that although no criminal prosecution was instituted, appellant's admitted conduct included criminal offenses repeated over a long period of time. The record suggests his divorce was not final and that he was guilty of adultery, a felony. He was at least guilty of fornication, a misdemeanor.

Very probably his activity also constituted lewd and lascivious conduct, a misdemeanor.

There is no statutory provision for judicial review of the action of the commission. Review by certiorari is limited to the following questions: [2]

"(1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question."

The record does not describe appellant's duties as a water tradesman. Thus it cannot be said that appellant's willingness to conduct his personal life in violation of accepted standards, nor the instance of failure to cooperate with the police directly impairs the adequacy of his performance of his duties. Appellant argues that the commission has no jurisdiction over an employee's off-the-job conduct unrelated to the performance of his duties or the efficiency of his department. He argues further that the phrases "immoral act," "conduct unbecoming an employee of the city," and "conduct wantonly offensive toward the public" are so vague when applied to conduct unrelated to duties that any such application is arbitrary and capricious.

The principal question, as we see it, is whether the municipal employer has any legitimate concern with the maintenance by its employees of acceptable standards of personal conduct outside their work; i.e., whether a departure from such standards has a rational bearing upon general fitness to continue in public employment. This question, in the instant case, can be answered only by resort to general principles. Neither the statute authorizing creation of a "civil service system of selection, tenure and status," nor the ordinance

[2] *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. (2d) 243, 255, 111 N. W. (2d) 198.

establishing this system contains any relevant express limitation upon the power of discharge. The provisions in the ordinance, relied upon by appellant, that the regulations shall be those "necessary to secure the best service for the city and each department affected thereby" impose no closer restriction than would be implied in any event from the concept of "tenure and status" in the statute.

"Such [civil service] laws usually provide that employees under the civil service can be removed only for some dereliction, or neglect or incapacity to perform some duty, *or some general delinquency affecting their general character and fitness for office,* and upon written charges, a hearing and evidence, and not otherwise." (Italics supplied.) [3]

The supreme court of Pennsylvania has said, "Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." [4] In the particular case a city fireman was indefinitely suspended for improper conduct with a mentally retarded minor girl.

The supreme court of Nebraska held that a city council could properly make a rule that members of the fire department "will be governed by the ordinary rules of good behavior observed by law-abiding citizens." [5] In that case a fireman was discharged for conduct off duty and at his home, fighting with police officers while in the apparently proper performance of their duties.

The court said: [6]

"It is contended that a fireman's conduct while off duty is of no concern to the city and that authority is lacking to suspend or discharge a fireman for conduct, while off duty, necessary for 'the proper management or discipline, or for the

[3] 4 McQuillin, Mun. Corp. (3d ed.), p. 296, sec. 12.248.
[4] *In re Zeber's Appeal* (1959), 398 Pa. 35, 43, 156 Atl. (2d) 821, 825.
[5] *Lewis v. Omaha* (1950), 153 Neb. 11, 13, 43 N. W. (2d) 419.
[6] Id., page 13.

more effective working or service of the fire department.' We think a city under the quoted section of the statute is authorized not only to inquire into the private character and conduct of an applicant for a position on the fire department to determine whether they meet the standards required by the city of those seeking such employment, but to make such inquiries after employment at any and all times. A city is not required to keep persons in its employ whose conduct is embarrassing or inimical to the interests of the city. *Kennett v. Barber,* 159 Fla. 81, 31 So. 2d 44; *Arehart v. School District,* 137 Neb. 369, 289 N. W. 540."

It has been held that a foreman in a city street department was properly discharged for cause when he had been convicted of abortion. "Obviously, conviction of a crime involving moral turpitude constitutes such cause." [7]

The supreme court of Florida upheld the discharge of a fireman who became drunk while off duty and beat his wife and another woman. [8]

The supreme court of Arkansas decided that off-duty operation of a gambling device by an employee in the city health department "was of such a nature as to bring him into disrepute as a municipal employee" and was a proper basis for discharge. [9]

A trial court in New York upheld the dismissal of a civil engineer who was found to have committed sodomy, although the criminal prosecution had been dismissed. [10]

There are a number of cases where discharges of police officers have been upheld where, off duty, they maintained

---

[7] *Ballurio v. Castellini* (1954), 29 N. J. Super. 383, 102 Atl. (2d) 662, 666.

[8] *Kennett v. Barber* (1947), 159 Fla. 81, 31 So. (2d) 44.

[9] *McNeal v. Civil Service Comm.* (1963), 237 Ark. 301, 372 S. W. (2d) 614.

[10] *Berman v. Gillroy* (1950), 198 Misc. 369, 97 N. Y. Supp. (2d) 521, affirmed 305 N. Y. 688, 112 N. E. (2d) 771, 105 N. Y. Supp. (2d) 902, certiorari denied 347 U. S. 921, 74 Sup. Ct. 521, 98 L. Ed. 1076.

improper association with girls or women. The principle of these cases may not, however, apply with equal force to the instant case because a policeman's failure to live up to acceptable moral standards has a more-palpable tendency to undermine public respect for law enforcement than would be the case with many other employees.

Appellant relies upon a line of authority holding that a municipal officer may be removed only for cause specially relating to the administration of his office.[11] It is apparent that there are inconsistent statements in some of the decisions with respect to removal of public officers and employees. In McQuillin's text, separate treatment to some extent is given to elective officers,[12] officers appointed for a definite term,[13] civil service employees,[14] appointive officers without term,[15] and employees usually holding at the pleasure of a superior.[16] Some of the differences in treatment are of historical origin. One might explain more restrictive rules as to the removal of officers elected or appointed for fixed terms on the basis that their entire fitness is periodically reviewed by the electorate or appointing authority, whereas the fitness of an employee with civil-service tenure is not ordinarily reviewed except in disciplinary proceedings. We conclude that the authority cited by appellant, and applicable to elected officers, does not control the present case.

Appellant cites statements of this court in proceedings for the discipline of attorneys indicating that the court would not ordinarily seek out nor concern itself with moral delinquencies in the private life of an attorney which do not affect his

---

[11] 37 Am. Jur., Municipal Corporations, p. 870, sec. 242; *Wilson v. Highland Park* (1938), 284 Mich. 96, 278 N. W. 778, 116 A. L. R. 352.

[12] 4 McQuillin, Mun. Corp. (3d ed.), p. 239, sec. 12.231.

[13] Ibid. page 242, sec. 12.232.

[14] Ibid. page 280, sec. 12.247.

[15] Ibid. page 298, sec. 12.249.

[16] Ibid. page 305, sec. 12.250.

duties and responsibilities as an attorney.[17] In this case, however, we are reviewing the power of the commission and the question whether its action was arbitrary or capricious. We are not reviewing the exercise of its discretion, if within proper bounds. This court, moreover, has long recognized conduct amounting to moral turpitude as a proper ground for disbarment.[18]

Appellant argues that the phrases of the commission's rule defining cause for discharge are too vague. We point out that the impropriety of appellant's conduct has been determined by the legislature, in prescribing criminal penalties for it, and the commission did not need to resort to any subjective standard in order to deem it immoral, unbecoming, and offensive. Moreover, courts have often upheld discharges for conduct described by similar phrases: "Unbecoming conduct," [19] "conduct prejudicial to good order," [20] and for "conduct unbecoming an officer," [21] or "employee," [22] or "gentleman." [23]

We are of the opinion that there must be an area where conduct of an employee of a municipality or other unit of government in violation of important and fundamental standards of propriety is of legitimate concern to the municipality. This is so because the municipality is part of the apparatus

[17] *In re Richter* (1925), 187 Wis. 490, 504, 204 N. W. 492; *In re Stolen* (1927), 193 Wis. 602, 613, 214 N. W. 379, 216 N. W. 127.

[18] *State v. McCarthy* (1949), 255 Wis. 234, 246, 38 N. W. (2d) 679; *State v. McKinnon* (1953), 263 Wis. 413, 416, 57 N. W. (2d) 404.

[19] *In re Zeber's Appeal, supra,* footnote 4; 3 Antieau, Mun. Corp. Law, p. 288.42, sec. 22.22.

[20] *Bolieu v. San Antonio* (Tex. Civ. App. 1959), 330 S. W. (2d) 234.

[21] *Appeal of Emmons* (1960), 63 N. J. Super. 136, 164 Atl. (2d) 184; *McNiff v. Waterbury* (1909), 82 Conn. 43, 72 Atl. 572.

[22] *Bruno v. Civil Service Comm.* (1962), 38 Ill. App. (2d) 100, 186 N. E. (2d) 108.

[23] *McNeal v. Civil Service Comm., supra,* footnote 9.

of government and the public reasonably expects all government to be concerned with the maintenance of good order. When an employee's unacceptable conduct falls within this area of concern, we find no implication in the statute or ordinance that such conduct cannot be cause for discharge unless it can be shown directly to impair performance of duties.

We summarize our conclusions in this case as follows:

Where a municipal employee has been discharged under a statute or ordinance which endows him with tenure, one appropriate question is whether some deficiency has been demonstrated which can reasonably be said to have a tendency to impair his performance of the duties of his position or the efficiency of the group with which he works. The record here provides no basis for finding that the irregularities in appellant's conduct have any such tendency. It must, however, also be true that conduct of a municipal employee, with tenure, in violation of important standards of good order can be so substantial, oft repeated, flagrant, or serious that his retention in service will undermine public confidence in the municipal service. In such case the conduct can reasonably be deemed cause for suspension or discharge even though it has no direct bearing upon his performance of his duties. Because arbitrary and capricious action must be avoided, the concept of "cause" should be the more strictly construed the less the relevance of the conduct complained of to the performance of duty.

Appellant's long-continued, unlawful, and morally unacceptable conduct involved in the major charge against him could reasonably be placed by the commission in the second category. Thus it provided, with the other charge as makeweight, sufficient grounds for suspension or discharge if the commission saw fit. Although a period of suspension, with reinstatement conditioned upon proof of a change in appel-

lant's relationship, might have been adequate to protect the city's interests, we cannot say that the choice of discharge was arbitrary, oppressive, or unreasonable, nor that it represented will rather than judgment.

The learned circuit judge correctly concluded that the action must be dismissed.

*By the Court.*—Judgment affirmed.