RICHARD L. FORTMAN, Plaintiff-Appellant, *v.* AURORA CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

Second District (2nd Division)   No. 74-313

Opinion filed April 15, 1976.

John C. Banbury, of Hart, Banbury & Banbury, of Aurora, for appellant.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, and Reid, Ochsenschlager, Murphy & Hupp, both of Aurora (George P. Lindner, Peter K. Wilson, Jr., and Irving Ochsenschlager, of counsel), for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff appeals from the decision of the circuit court of Kane County which confirmed the decision of the Aurora Civil Service Commission, discharging him from the Sanitation Department of the City of Aurora. His discharge was based upon section 15.02(j) of the Civil Service Rules and Regulations of the City of Aurora, which includes as grounds for discharge of classified employees, "committing a criminal offense involving moral turpitude."

The plaintiff, a 12-year employee of the Aurora Department of Sanitation, was discharged after he had pled guilty to charges of unlawful delivery of a controlled substance, a Class 2 felony. (Illinois Controlled Substances Act section 401, Ill. Rev. Stat. 1973, ch. 56½, §1401.) The specific act involved, admitted by the plaintiff at his civil service hearing, was the sale of heroin to a man who represented that the substance was needed by some "girls" of his who were addicts. (The purchaser was actually an I.B.I. agent participating in a large scale drug investigation in the City of Aurora.) All contacts involved in effecting the sale apparently took place in plaintiff's home or in the tavern where he was employed part-time, rather than on the City's premises. After plaintiff's guilty plea and conviction, the circuit court judge placed him on probation, and sent a letter to the Civil Service Commission urging the importance of employment to a probationer. However, after notice and a hearing at which plaintiff testified in his own behalf, the Commission saw fit to discharge plaintiff on the grounds initially stated.

On appeal plaintiff asserts there was no evidence that his conviction was for commission of an offense involving moral turpitude, that under the Commission's rules an employee may not be discharged unless it is shown that his offense directly affects the value of his service or the performance of his job and there was no such showing supported by substantial evidence, and, finally, that the decision of the Civil Service Commission was arbitrary and unreasonable and in violation of plaintiff's right to due process under the Illinois and United States constitutions.

■■ Standards for reviewing a decision of an administrative body are well defined: its findings of facts are to be taken as prima facie true, and an administrative decision must be supported by substantial evidence. (*Gibbs v. Orlandi*, 27 Ill. 2d 368, 371 (1963); *Christenson v. Board of Fire & Police Commissioners*, 11 Ill. App. 3d 487, 492 (1973).) "Substantial

evidence" has been defined succinctly by the Supreme Court of Florida as "* * * such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957).

■■ With these standards in mind, we have examined the record of the administrative hearing to determine whether it included substantial evidence that the plaintiff committed an offense involving moral turpitude. There can be no doubt that such evidence is present. Plaintiff himself admitted that he had been convicted of the crime of unlawful delivery of a controlled substance. He additionally admitted to the specific circumstances underlying the incident: that he had sold heroin to a man who represented he was from out of State and had several addicted girls who "belonged" to him who were in need of the drug. Plaintiff seeks to justify his actions by pointing out the misery which addicts undergo when the drug they need is withdrawn. This is a patently specious argument, which, if accepted, could immunize from "moral turpitude" the acts of any drug pusher who merely feeds, rather than initiates, an addict's habit.

■■ Our Supreme Court has said: "Anything done knowingly contrary to justice, honesty or good morals involves moral turpitude." (*In re Pontarelli*, 393 Ill. 310, 314 (1946).) Although we have found no Illinois case specifically holding the unlawful sale of narcotics with intent that they be used by the addict to be an offense involving moral turpitude, we have no doubt that these actions fall well within the definition cited above. Moreover, we have found no case from any other jurisdiction holding such action to be free from moral turpitude. To the contrary, illegal trafficking in narcotics has been universally held to involve moral turpitude. (See, *e.g.*, *State v. Willstead*, 248 Wis. 240, 21 N.W.2d 271, 272 (1946); *In re McNeese*, 346 Mo. 425, 142 S.W.2d 33, 34 (1940); *In re Shepard*, 35 Cal. App. 492, 170 P. 442, 443-44 (1917).) The plaintiff cites several cases wherein violations of the Harrison Narcotics Act were deemed not, per se, to involve moral turpitude. (*United State ex rel. Andreacchi v. Curran*, 38 F. 2d 498 (S.D. N.Y. 1926); *United States ex rel. DeLuca v. O'Rourke*, 117 F. Supp. 143 (W.D. Mo. 1953).) The last case was reversed in *United States ex rel. DeLuca v. O'Rourke*, 213 F.2d 759, 762 (8th Cir. 1954), wherein the court made it amply clear that narcotics dealing involves moral turpitude. The *Andreacchi* result has not been concurred in by other jurisdictions. (See, *e.g.*, *Garlington v. Smith*, 63 Ariz. 460, 163 P.2d 685, 687 (1945); *Menna v. Menna*, 102 F.2d 617, 618 (D.C. Cir. 1939); *Speer v. State*, 109 S.W.2d 1150, 1155 (Tex. Civ. App. 1937).) Furthermore, as the *Andreacchi* court was careful to point out in

reaching its conclusion, violation of the Harrison Narcotics Act "consists not in engaging in narcotic traffic, but in merely failing to register, pay a tax and comply with certain regulations of the Internal Revenue Commissioner." *Andreacchi*, at 499.

We hold that plaintiff's own testimony provided substantial evidence from which the Aurora Civil Service Commission could reasonably conclude the plaintiff had committed an offense involving moral turpitude as set out in section 15.02(j) of the City's Rules and Regulations.

■■ Plaintiff asserts that nevertheless, he could not be discharged from his position, because the City failed to make a specific showing that his actions were directly connected with the value of the service or the performance of his job. As a basis for this argument plaintiff relies upon section 15.01 of the Rules and Regulations of the Aurora Civil Service Commission which states in pertinent part:

> "*GENERAL PROPOSITION*. No classified employee shall be * * * removed * * * for * * * any reason not directly connected with the value of the service or the performance of his job."

Plaintiff erroneously reads section 15.01 as an additional condition which must be shown for discharge. His position is untenable for several reasons. The language of section 15.02, which lists causes for discharge (including subsection (j) under which plaintiff was discharged) clearly states: "The following grounds shall be *sufficient* cause for removal of an employee from the City Service," (Emphasis ours.) It is consistent with the wording of section 15, and with sound principle, to conclude that the authors of the rule regarded commission of a criminal offense involving moral turpitude, per se, sufficient detriment to the value of a civil servant's employment to warrant his dismissal.

This is neither an arbitrary nor an unreasonable position for the City to take. As was pointed out by the Supreme Court of Arkansas:

> "It must be realized upon reflection that in our system of self-government it is essential that those in the public service demonstrate a high sense of morality. Public employment must be regarded as something more than a mere opportunity to earn a selfish livelihood. If those privileged to be in the public service do not display that basic integrity that the government itself must have, how can the people be expected to maintain their confidence in the system?" *McNeal v. Civil Service Com.*, 237 Ark. 301, 303, 372 S.W.2d 614, 616 (1963).

Moreover, even if plaintiff is correct in his assertion that, under section 15.01, there must be substantial evidence that the reason for discharge is "directly connected with the value of the service or performance of his job," we believe that his own testimony at the hearing provided such

evidence. In *Cutright v. Civil Service Com.*, 128 Ill. App. 2d 331, 337 (1970), the court observed:

> "We cannot say that the detriment must be in all cases directly connected with the *performance* of the job, as for example reporting to work on time or failing to follow directions of a superior. The Commission has a right to consider other factors such as nonpayment of debts *in reference to the example set by the employee's conduct, even if the act or omission complained of is not directly connected with the daily performance of assigned duties.*" (Emphasis ours.)

In the instant case, plaintiff testified that his conviction grew out of the sale of heroin and that his position with the City involved supervising seven three-person garbage truck crews. We think this established a substantial basis of fact from which the fact at issue (the reduced value to the municipal service of plaintiff as a supervisor of other City employees) can be reasonably inferred, thus meeting the above criterion for substantial evidence. (*De Groot.*) Not only did plaintiff set a poor example for the employees he supervised but, on the evidence presented, general confidence in City government would be seriously undermined by the retention of one who committed an offense of this grave nature. See *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 361 (1963); *State ex rel. Gudlen v. Civil Service Com. of City of West Allis*, 27 Wis. 2d 77, 133 N.W.2d 799, 805 (1965); and *McNeal*, 237 Ark. 3d 301, 303, 372 S.W.2d 614, 616.

Plaintiff contends that his discharge by the Aurora Civil Service Commission was unreasonable and arbitrary and violative of due process. As a foundation for his due process arguments, plaintiff correctly asserts that since he had attained civil service status the right to work is a property right of which he cannot be deprived without due process. (*Levin v. Civil Service Com.*, 52 Ill. 2d 516, 520, 521 (1972).) Plaintiff then asserts he has been deprived of this right to work without due process in that (1) the commission discharged plaintiff without meeting the requirements for discharge set out in its own Rules, and (2) the cause for his discharge (an offense of "moral turpitude") is unconstitutionally vague. The first argument has already been disposed of above. We have found the Commission did not violate its own procedures for discharge of a classified employee. We also reject plaintiff's second due process argument. Over 50 years ago the court in *White v. Andrew*, 70 Colo. 50, 197 P. 564 (1921), observed that the expression "moral turpitude" has been used in statutes, textbooks and court opinions for too many years to leave any questions regarding its validity as a legal term. The Supreme Court of Wisconsin has more recently pointed out, in similar context, "[C]ourts

have often upheld discharges for conduct described by similar phrases: 'Unbecoming conduct,' 'conduct prejudicial to good order,' and for 'conduct unbecoming an officer,' or 'employee,' or 'gentlemen.' " (*West Allis*, 27 Wis. 2d 77, 86, 133 N.W.2d 799, 804.) We observe, as did the court in *West Allis*, that the impropriety of plaintiff's conduct has been determined by the legislature in their having prescribed criminal penalties for such conduct, and the Civil Service Commission "did not need to resort to any subjective standard in order to deem it immoral, unbecoming and offensive." *West Allis*, 27 Wis. 2d 77, 86, 133 N.W.2d 799, 804.

■■ Plaintiff's final argument is that his discharge was unreasonable and arbitrary in view of the fact that the trial judge had granted him probation and had written a letter to the Commission explaining the importance of employment in a probation program. Plaintiff does not claim this contention rises to constitutional status. We find it to be without merit. As discussed above, the municipality has a legitimate interest in the discharge of an employee whose offense is such that his retention will undermine public confidence in a municipal service. *West Allis*, 27 Wis. 2d 77, 87, 133 N.W.2d 799, 805.

For the above reasons, we affirm the decision of the trial court upholding the decision of the Aurora Civil Service Commission.

Order affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.