2023 IL App (3d) 220292

Opinion filed April 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0292 Circuit No. 22-CH-33 |
| KARL FERRELL, | ) ) ) | The Honorable John C. Anderson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESISING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Brennan[1] concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

_____

**OPINION**

¶ 1        Defendant-Appellant Karl Ferrell was elected a trustee of Joliet Township in April 2021.

Eleven months later, the Will County State's Attorney filed a *quo warranto* complaint on behalf

of the State alleging that Ferrell was ineligible to hold that office because he had previously been

convicted of several drug-related felonies which he had failed to disclose before assuming office.

_____

[1] Justice Brennan was assigned to this case upon his election to the Third District Appellate
Court effective December 5, 2022. Justice Brennan has read the briefs and listened to the recording of
the oral argument.

The State sought a declaration that Ferrell was not eligible to hold his seat as a township trustee and that the seat was vacant. The State also sought an injunction barring Ferrell from holding the office of township trustee and from exercising the powers of that office. Ferrell filed affirmative defenses to the State's complaint, and the parties filed cross-motions for summary judgment.

¶ 2 The circuit court granted the State's motion in part and denied Ferrell's motion. The court held that Ferrell has no authority or eligibility to hold the office of Joliet Township Trustee and declared his seat to be vacant. Ferrell filed a motion to reconsider, which the circuit court denied. This appeal followed.

¶ 3 BACKGROUND

Ferrell was elected a Trustee of Joliet Township on April 6, 2021. He took the oath of office and assumed his duties on May 14, 2021. He served in that capacity for approximately 10 months without incident.

¶ 4 After Ferrell was sworn in as trustee, the State's Attorney became aware that Ferrell had been convicted of multiple felonies before he ran for and assumed the office, including three drug-related felonies and a felony for the unlawful possession of a weapon by a felon. The most serious of Ferrell's convictions was a 2010 conviction for possession with intent to deliver more than 1 gram but less than 15 grams of a controlled substance, a Class 1 felony. Ferrell pleaded guilty to that offense and was sentenced to four and a half years' imprisonment. He also pleaded guilty to possession of cannabis with intent to deliver and to the unlawful possession of a gun by a felon. (The sentences for those offenses ran concurrently with his sentence for the Class 1 felony conviction.) He had been convicted of other drug-related offenses prior to 2010. Ferrell did not disclose any of his prior felony convictions before or during his campaign for Trustee, nor at any

2

time thereafter. In December of 2020, Ferrell signed a notarized "Statement of Candidacy" form stating that he was "legally qualified" for the position of trustee of Joliet Township.

¶ 5 On March 8, 2022, the State filed a *quo warranto* complaint in the circuit court of Will County alleging that Ferrell was ineligible to serve as a township trustee pursuant to section 55-6 of the Illinois Township Code (the Township Code) (60 ILCS 1/55-6 (West 2020) and section 5/29-15 of the Illinois Election Code (Election Code) (10 ILCS 5/29-15 (West 2020)). Section 55-6 of the Township Code provides that a person is not eligible to hold any township office "if that person, at the time required for taking the oath of office, has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 60 ILCS 1/55-6 (West 2020). Section 29-15 of the Election Code provides, in pertinent part, that "[a]ny person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law." 10 ILCS 5/29-15 (West 2020).

¶ 6 The State's complaint alleged three counts. In Count 1, the State demanded that Ferrell show that he is authorized to hold the seat of trustee of Joliet Township. In Count II, the State sought a declaratory judgment that Ferrell was not eligible to hold that office due to his prior felony convictions, which the State alleged were "infamous crimes." In Count III, the State sought an injunction barring Ferrell from holding his seat and from exercising the power of the office of township trustee.

¶ 7 In his Answer to the State's complaint, Ferrell admitted his prior convictions but asserted three affirmative defenses. Specifically, Ferrell asserted that: (1) the State's delay in bringing its

3

*quo warranto* action was unreasonable and unjustified, and was therefore barred by the defense of laches; (2) the Township Code violated the equal protection clauses of the federal and Illinois constitutions by arbitrarily establishing stricter eligibility requirements for Township offices than for other elected offices; and (3) he had recently filed a "Petition for Gubernatorial Pardon/Restoration of Rights," the granting of which would render this action moot. Ferrell asked the circuit court to stay the proceedings pending Governor Pritzker's decision regarding his pardon application.

¶ 8        The circuit court handled the case on an expedited basis. After conducting limited discovery, the parties filed cross-motions for summary judgment.

¶ 9        On June 24, 2022, the circuit court granted the State's motion in part and denied Ferrell's motion. The court found and declared that Ferrell "has no authority or eligibility to hold the office of Joliet Township Trustee," and declared his seat to be vacant. It rejected Ferrell's laches defense, holding that Ferrell had failed to establish the extremely stringent requirements for the application of laches in a *quo warranto* proceeding. The circuit court declined to address Ferrell's equal protection argument because it found that Ferrell had failed to comply with Illinois Supreme Court Rule 19, which, according to the circuit court, requires a party challenging the constitutionality of a statute to provide timely notice to the Attorney General.

¶ 10        The circuit court refused to stay the action pending the Governor's decision on Ferrell's pardon application because it found that: (1) Ferrell's request for a stay is not a recognized affirmative defense; (2) there is no way to know if or when the governor will act on the petition, and the citizens of Joliet cannot be required to wait indefinitely for a trustee; and (3) Ferrell had failed to establish that any pardon or restoration of rights by the Governor would apply retroactively to the time Ferrell took the oath of office. Based on these findings, the circuit court

4

ruled that, even if Ferrell ultimately receives a pardon, he would remain ineligible to serve as a trustee under the plain terms of the Township Code, which requires that eligibility exists "at the time required for taking the oath of office."

¶ 11    The circuit court stayed its Order for 30 days so that Ferrell would have an opportunity to appeal. Ferrell was suspended from office with pay pending the resolution of the *quo warranto* action.

¶ 12    After the circuit court's ruling, Ferrell served notice of his constitutional claim upon the Attorney General.  He then filed a motion for reconsideration with the circuit court arguing that he was not required to notify the Attorney General of his claim because Rule 19 states that notice to the State's Attorney suffices, and the State's Attorney was notified of the claim when Ferrell filed his affirmative defenses.  Ferrell further noted that Rule 19 states that notice is unnecessary when the relevant State officer is a party to the action, as it was in this case.  The circuit court rejected these arguments and denied Ferrell's motion.

¶ 13    Ferrell timely appealed the circuit court's judgment. We stayed the circuit court's Order pending the resolution of the appeal.  The State filed a motion to dismiss the appeal on jurisdictional grounds, which we denied.  After oral argument, we ordered the parties to file supplemental briefs addressing, among other issues: (1) if we were to find that the Township Code violated equal protection, what election law would apply to determine Ferrell's eligibility to hold a township office; and (2) if the Election Code applies, has Ferrell committed an "infamous crime" under section 29-15 of that Code?  The parties filed supplemental briefs addressing these issues.

ANALYSIS

¶ 14    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

5

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). A *quo warranto* action may be decided by summary judgment. *People ex rel. Alvarez v. Price*, 408 Ill. App. 3d 457 (2011); *see also People ex rel. Smith v. Brown*, 356 Ill. App. 3d 1096, 1101–02 (2005). We review a trial court's grant or denial of summary judgment *de novo*. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003).

¶ 15                                                    1.  Laches

¶ 16        Ferrell argues that the State's complaint should be barred by the doctrine of laches.  He notes that the State did not bring its *quo warranto* complaint until March 9, 2022, twelve months after his candidacy became public and almost a year after his election.  Ferrell contends that this delay was unreasonable and inexcusable because Ferrell's prior felony convictions were matters of public record for more than a decade before he announced his candidacy.

¶ 17        Laches is an affirmative defense which may be asserted against a plaintiff who "has knowingly 'slept' on its rights and, thus, is deemed to have acquiesced to the actions of the defendant." *City of Chicago v. Alessia*, 248 Ill. App. 3d 218, 228-29 (1994); see also *Van Milligan v. Board of Fire & Police Commissioners of the Village of Glenview*, 158 Ill. 2d 85, 90 (1994). The burden is on the defendant to show a lack of due diligence on the part of the plaintiff in asserting its rights against him and that this delay caused him prejudice. The defendant must prove not only that a considerable amount of time has passed, but also that the plaintiff had knowledge of the facts giving rise to its claim and chose not to act upon them.  *Alessia*, 248 Ill. App. 3d 218 at 229.

¶ 18        Courts are reluctant to impose laches to the actions of a government entity unless the defendant can show "unusual," "extraordinary," or "compelling" circumstances. *Van Milligan*, 158 Ill. 2d at 90–91. "Mere nonaction of governmental officers is not sufficient" to support a

6

claim of laches. *Alessia* 348 Ill. App. 2d at 229 (quoting *City of Marengo v. Pollack*, 335 Ill. App. 3d 981, 989 (2002)). Rather, a positive or affirmative act must have been taken by such officers, inducing the action of the defendant under the circumstances and making it inequitable to permit the governmental entity to retract what its officers had done. *Alessia*, 348 Ill. App. 3d at 229. Courts apply these exacting requirements because a more liberal application of the laches defense against a government entity could impair the functioning of the government due solely to the negligence or inattention of government officials, thereby adversely affecting the public. *Van Milligan*, 158 Ill. 2d at 90.

¶ 19    The general rule in Illinois is that the defense of laches may not be asserted where a complaint in *quo warranto* is filed and the public interest is involved. *People ex rel. Phelps v. Kerstein*, 413 Ill. 333 (1952). However, in *quo warranto* actions seeking the ouster of public officials, an exception is made if the defendant shows that, as a result of inexcusable delay and public acquiescence, a judgment of ouster would result in great public inconvenience and detriment. *Price*, 408 Ill. App. 3d 463; *People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d at 226, 235 (2007); see also *People ex re. Hanrahan v. Village of Wheeling*, 42 Ill. App. 3d 825, 840 (1976). In such cases, the public interest requires that laches be an available bar to the proceedings. *Hanrahan*, 42 Ill. App. 3d at 840. *Id.*

¶ 20    However, to prevail on a defense of laches, the office holder must show that the *public* would suffer great detriment by his ouster, not that *he himself* would suffer such detriment. He must show "concrete and definite evidence" that "significant public harm would result from an ouster." *Hanrahan*, 42 Ill. App. 3d at 841. The fact that the public voted for the office holder is not enough to meet this showing. *Price*, 408 Ill. App. 3d 463. Allowing an office holder to meet the showing of great public detriment merely by showing that he was elected would constitute an

7

"exception that swallows the rule." *Id.* Moreover, the mere fact that the individual has held the office for a substantial period of time does not mean that his ouster would constitute a great detriment to the public that would support a laches defense. See *People ex rel. Fitzsimmons v. Swailes*, 101 Ill. 2d 459, 469 (1984) (ousting an official who improperly held dual offices for approximately 12 years); *Price*, 408 Ill. App. 3d 463 (affirming the removal of an individual who had held three incompatible positions for more than three years).

¶ 21    Generally, where laches is asserted against a government entity in a *quo warranto* proceeding, courts have found "great public inconvenience and detriment" only when the relief sought in the government's lawsuit would impose substantial financial costs on the public or cause disruptions to students or other personnel. *Price*, 408 Ill. App. 3d at 463-64; *Scarpelli*, 371 Ill. App. 3d at 235; *Junior College District No. 526*, 42 Ill. 2d at 139 (*quo warranto* action challenging the incorporation of a school district and the annexation of another district was barred by laches where the action was filed two years after the school district was formed, the financial cost to the public would be substantial, and personnel and student disruption would take place); *People ex rel. Lindsey v. Board of Education*, 3 Ill. 2d 159, 167 (1954) (permitting a laches defense where a school district organization was challenged after a five-year delay, where there was no excuse for the delay, and substantial public expense and student inconvenience would result if the action were successful); *People ex rel. Cherry Valley Fire Protection District v. City of Rockford*, 122 Ill. App. 2d 272, 277–78 (1970) (allowing a laches defense to a *quo warranto* action challenging the City of Rockford's annexation of certain property where the Board of Education had already expended considerable funds to acquire and develop their site within the annexed territory on the assumption that it was a part of the City of Rockford). Each of these

8

cases involved "concrete and definite evidence" of "specific harm" to the public, whether in the form of public expense or loss of services.

¶ 22    In this case, Ferrell argues that the State did not bring the instant *quo warranto* action until twelve months after his candidacy became public and almost a year after he was elected and began carrying out his duties, even though the information about his prior convictions was a matter of public record. Ferrell argues that this delay was unreasonable and inexcusable. He further contends that removing him from office at this time will cause great detriment to the public because: (1) it will disrupt the functions of the Township; (2) it will force the people who elected him to be served by an unelected successor; and (3) the impediment to his eligibility could be removed if the governor grants his requested pardon.

¶ 23    These arguments fail. As an initial matter, Ferrell alleges nonaction by a government official, not an affirmative act that induced some action on Ferrell's part. As noted above, that is insufficient support a claim of laches against a government actor. *Alessia,* 348 Ill. App. 2d at 229; *City of Marengo*, 335 Ill. App. 3d at 989.

¶ 24    Moreover, the State's delay in bringing suit is largely attributable to Ferrell's own actions. In his candidacy form, Ferrell falsely represented that he was eligible to serve as a trustee. The State claims that it discovered that Ferrell was ineligible approximately seven months after his election, and Ferrell does not dispute that claim. The State filed its *quo warranto* complaint approximately four months later. Regardless of when the discovery was made, the State filed its complaint less than one year from the time Ferrell was elected. If this were taken to support a laches defense, the State's Attorney would be required to vet every candidate for every office to ensure that he is eligible for the office he seeks. Under the circumstances presented in this case, the State's delay was not unreasonable.

9

¶ 25    In addition, contrary to Ferrell's argument, the mere fact that Ferrell was elected and that he served in office for almost a year does not support a laches defense. *Price*, 408 Ill. App. 3d 463; *Fitzsimmons*, 101 Ill. 2d at 469. In any event, Ferrell cannot show that the public acquiesced in his election and service as a Joliet Township Trustee because the public elected him without knowing about his criminal convictions and his resulting ineligibility for office.

¶ 26    In sum, Ferrell has not demonstrated the type of significant, concrete harm to the public that would support a defense of laches against the State's *quo warranto* claim. The circuit court correctly rejected Ferrell's laches argument.

¶ 27                           2.  The Election Code

¶ 28    Ferrell argues that the Township Code violates the equal protection clauses of the federal and Illinois constitutions by arbitrarily establishing stricter eligibility requirements for township offices than for other elected offices. Specifically, Ferrell notes that the Township Code categorically bars anyone convicted of a felony from serving as a township trustee, without providing that a convicted felon might become eligible if he receives a pardon or other restoration of rights as provided by law. By contrast, the Election Code bars only those convicted of "infamous crimes," (as opposed to any felony), and allows for a felon to become eligible for elected office after receiving a pardon or other restoration of rights as provided by law. Ferrell argues that the imposition of stricter eligibility requirements for those seeking township offices is not supported by any rational basis, and is therefore unconstitutional.

¶ 29    We must avoid the adjudication of constitutional questions when a case can be decided on other grounds. *Beahringer v. Page*, 204 Ill. 2d 363, 370 (2003) ("A court will consider a constitutional question only where essential to the disposition of a case, *i.e.,* where the case cannot be determined on other grounds."); see also *People v. Jackson*, 2013 IL 113986, ¶ 14

10

("courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases"); *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38; *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16. We do not reach Ferrell's equal protection argument because this case be decided on other grounds. Even assuming *arguendo* that the stricter eligibility requirements imposed by Township Code violate equal protection, Ferrell would be ineligible to serve as a township trustee under the more lenient requirement of the Election Code (which apply to those seeking "any office of honor, trust or profit") because he was convicted of an "infamous crime" as defined by the Election Code.

¶ 30        Section 29-15 of the Election Code provides that:

> "Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law. Any time after a judgment of conviction is rendered, a person convicted of an infamous crime may petition the Governor for a restoration of rights." 10 ILCS 5/29-15 (2021).

¶ 31        Section 1-24 of the Criminal Code was repealed in 1987. However, [c]ourts reviewing section 29–15 of the Election Code subsequent to the repeal of section 124–1 *** have continued to apply its definition of the term 'infamous crime.' " *Alvarez v. Williams*, 2014 IL App (1st) 133443, ¶ 10. Under former section 124–1, an "infamous crime" was defined to include:

11

"the offenses of arson, bigamy, bribery, burglary, deviate sexual assault, forgery, incest or aggravated incest, indecent liberties with a child, kidnaping or aggravated kidnaping, murder, perjury, rape, robbery, *sale of narcotic drugs*, subornation of perjury, and theft if the punishment imposed is imprisonment in the penitentiary." (Emphasis added.) Ill. Rev. Stat.1983, ch. 38, ¶ 124–1 (repealed by Pub. Act 84–1047, § 2 (eff. July 1, 1986)).

¶ 32        Ferrell was convicted of the possession of a controlled substance with intent to deliver, a Class 1 felony. Although the nature of the controlled substance is not entirely clear from the parties' briefs, it appears to have been cocaine. Ferrell's criminal history data, which is contained in the record on appeal, reflects that he was convicted of possession with intent to deliver between 1 and 15 grams of a controlled substance in violation of section 401(c)(2) of the Controlled Substances Act (720 ILCS 570/401(c)(2) (West 2008). That section criminalizes the possession of 1 gram or more but less than 15 grams of "any substance containing cocaine," and classifies this offense as a Class 1 felony. *Id.* At the time Ferrell was convicted, cocaine was defined as a "narcotic drug" under the Criminal Code. 720 ILCS 570/102(aa)(4) (West 2010). (It still is today, but under a different subsection.) As noted above, former section 124-1 characterized the sale of narcotic drugs as an "infamous crime." The question before us is whether the *possession with intent to deliver* a narcotic drug is sufficiently like the *sale* of a narcotic drug to qualify as an "infamous crime" under former section 124-1.

¶ 33        We hold that it is. The possession of narcotic drugs with the intent to sell them is simply the precursor to the actual sale. Both crimes involve the same criminal intent. The only difference is that a defendant charged with possession with intent to deliver was caught before he could achieve his objective by making the sale. That fact has no bearing on the defendant's

criminal intent or upon the gravity of the offense. Moreover, possession with intent to deliver is as damaging to society as actual delivery because only a small fraction of persons who possess with intent to sell will be caught before they sell the drugs. Accordingly, is not surprising that the Controlled Substances Act groups these offenses together in the same section and imposes the same penalties for each offense. See 720 ILCS 570/401(West 2022). In determining the gravity of a drug offense, the legislature draws no distinction between the manufacture, delivery, or possession with intent to deliver. *Id.* We see no reason to depart from the legislature's considered judgment on this issue.

¶ 34          Further, under the common law, crime is "infamous" if it involves moral turpitude. *Williams*, 2014 IL App (1st) 133443, ¶ 10. For many of the reasons set forth above, courts in Illinois and in several other jurisdictions have held or implied that possession with intent to deliver narcotic drugs, including cocaine, is a crime involving moral turpitude. See, *e.g.*, *Fortman v. Aurora Civil Service Comm'n*, 37 Ill. App. 3d 548, 551 (1976) ("illegal trafficking in narcotics has been universally held to involve moral turpitude") (collecting cases); *In re Fortunado Mendes*, 598 A.2d 168, 169 (D.C. App. 1991) (ruling that possession with intent to distribute cocaine is a crime involving moral turpitude *per se.); Portaluppi v. Shell Oil Co.*, 684 F. Supp. 900, 904 n.13 (E. D. Va. 1988) ("Virtually all courts agree that narcotics possession with intent to distribute is a crime involving moral turpitude.")

¶ 35          In any event, even if the drug at issue were not a "narcotic drug" (and therefore not included within the scope of any crime listed as "infamous" in section 124-1), we would still conclude that the possession of a controlled substance with intent to deliver is an infamous crime. "The determination of what constitutes an infamous crime, insofar as it effects a vacancy in office, is not an exclusive legislative function, but is subject to judicial decision in the light of

13

the common law as it existed when the constitution was adopted." *People ex rel. Keenan v. McGuane,* 13 Ill. 2d 520 (1958); see also *People ex rel. Symonds v. Gualano*, 97 Ill. App. 2d 248 (1968). Under the common law, a felony is infamous "when it is inconsistent with commonly accepted principles of honesty and decency, or involves moral turpitude." *Williams*, 2014 IL App (1st) 133443, ¶ 10. The possession with intent to deliver *any* controlled substance is dishonest, indecent and involves moral turpitude. As noted above, there is no principled moral distinction between possessing illegal drugs with intent to sell and the actual sale of such drugs. Both involve the concealment of and trafficking in harmful, addictive, and potentially deadly illegal substances that cause great suffering and impose enormous costs on society, both economically and socially.

¶ 36    Moreover, although it is not controlling of our analysis, our conclusion accords with the legislature's purpose in enacting the Controlled Substances Act. The Controlled Substances Act criminalizes the possession with intent to deliver various non-narcotic controlled substances, in recognition of "the rising incidence in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois." 720 ILCS 570/100. The stated purpose of the Act is to provide a system of control over the distribution and use of controlled substances which will more effectively limit access to such substances and deter the unlawful and destructive abuse of such substances. As noted, the Controlled Substances Act applies to all controlled substances, including non-narcotic controlled substances.

¶ 37    Ferrell argues that his 2010 felony convictions, including his conviction for possession with intent to deliver a controlled substance, were not "infamous" because the circumstances of his arrest and his tenuous connection with the illegal substances at issue suggest otherwise.

14

However, while these considerations might be relevant to mitigate Ferrell's sentence, they have no bearing on the nature and gravity of the of the crimes of which he was convicted. "Ínfamy arises because of the nature of the crime," not the punishment. Because we hold that the unlawful possession with intent to deliver a controlled substance is, by nature, infamous, we do not need to consider the circumstances of Ferrell's arrest or the conduct that gave rise to the charge. Ferrell pleaded guilty to possession with intent to deliver a controlled substance and was convicted. The crime is infamous *categorically*, not because of the circumstances of the arrest or the facts supporting the charge.

¶ 38        Ferrell further notes that the State has consistently argued that the Township Code, not the Election Code, governs his eligibility to serve as a Township Trustee. The State initially brought its claims under both the Township Code and the Election Code, but it withdrew its claim under the Election Code during the circuit court proceedings. Accordingly, the circuit court's decision was not based on the Election Code, and the court did not make a finding as to whether Ferrell had been convicted of an infamous crime under the Election Code.

¶ 39        This does not affect our analysis. The State made arguments regarding the Election Code in its initial brief on appeal, including the claim that Ferrell was ineligible to hold office under the Election Code because he had been convicted of infamous crimes. After oral argument, we ordered the parties to submit supplemental briefs on the infamous crime issue under the Election Code, which they did. Thus, the issue was squarely before us. In any event, we could have decided the appeal under the Election Code even if we had not ordered supplemental briefing on the issue. "It is well established that an appellee may argue in support of the judgment on any basis which appears in the record" (*Studt v. Sherman Health Systems*, 2011 IL 108182951, ¶ 48 (Karmeier, J. specially concurring), citing *Hayes v. Board of Fire &*

15

*Police Commissioners*, 230 Ill. App. 3d 707, 710 (1992)), and an appellate court may affirm a trial court's judgment on any grounds which the record supports (*Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 404 Ill. App. 3d 658, 665 (2010)), even where those grounds were not argued by the parties (*Studt*, 2011 IL 108182951, ¶ 48 (Karmeier, J. specially concurring); see also *Redd v. Woodford County Swine Breeders, Inc.*, 54 Ill. App. 3d 562, 565 (1977)).

¶ 40        The State argues that Ferrell may not bring his constitutional claim because he failed to give proper notice of that claim to the Attorney General. Because we have declined to reach Ferrell's equal protection claim, we do not need to address this argument. Contrary to the dissent's suggestion, Ferrell's failure to provide timely notice of his constitutional claim does not obviate our analysis under the Election Code. As noted above, both Ferrell and the State raised arguments under the Election Code. In his supplemental brief, Ferrell argued that he would be eligible to obtain a restoration of rights and to serve as a township trustee under the Election Code because he has not been convicted of an "infamous crime." He further contended that a pardon by the Governor would apply retroactively to the time he assumed office. These claims arise under state law and do not challenge the constitutionality of a statute. Rule 19 does not require Ferrell to give notice of such claims to the Attorney General. In any event, the failure to provide timely notice of a constitutional claim to the Attorney General is not a jurisdictional defect, and we have the discretion to excuse it. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 118-19 (2004). Excusing untimely notice is particularly appropriate where, as here, the Attorney General has received notice of the claim before the appellate court proceedings have concluded and has not participated in the litigation. *Id.* at 119. In such cases, the purpose of Rule 19 has been served. *Id.*

16

¶ 41     In addition, contrary to the dissent's suggestion, *People by Foxx v. Agpawa*, 2018 IL App (1st) 171976 and *People v. Hofer*, 363 Ill. App. 3d 719 (2006) do not defeat Ferrell's constitutional claim.  Neither case involves the Township Code, and neither addresses the constitutional issue presented in this case.  In any event, we properly chose not to address Ferrell's equal protection claim because the case can be decided on nonconstitutional grounds.

¶ 42                    3.  Retroactive Application of a Pardon

¶ 43     Ferrell argues that we should stay this appeal until Governor Pritzker acts on Ferrell's petition for a pardon.  Ferrell maintains that, if the Governor pardons his prior convictions, his restoration of rights would apply retroactively to the time Ferrell took the oath of office, thereby rendering him eligible to continue serving as a Trustee of Joliet Township under the Election Code.  Ferrell raised this claim below both as an "affirmative defense" and as a basis for requesting the circuit court to stay the action.

¶ 44     We reject Ferrell's argument and decline his request for stay.  As the circuit court correctly ruled, Ferrell's argument on this issue does not raise a recognized affirmative defense and is not a basis for defeating summary judgment.  Nor is it reason to stay this appeal.  As the circuit court noted, there is no way of knowing when or if Ferrell's pardon petition will be acted upon.  Even if a pardon is ultimately granted, it is unknown whether the Governor will apply the pardon retroactively.  In essence, Ferrell seeks an indefinite stay based on his speculation that his pardon application will be (1) acted upon, (2) granted, and (3) applied retroactively.  We will not grant a stay based upon such speculation.

¶ 45     We also decline to address Ferrell's contention that any future pardon would apply retroactively. The Governor has not issued a pardon yet, and there is no way to know whether he ever will.   By asking us to determine the legal effect that a *potential* pardon *might* have on

17

this case, Ferrell is asking us to give an advisory opinion or legal advice as to a future event that has not yet occurred, and may never occur. It would be improper to provide such advice. *Beahringer*, 204 Ill. 2d at 374 -775; *Hertz Corp. v. City of Chicago*, 2015 IL App (1st) 123210, ¶ 47, *reversed on other grounds*, 2017 IL 119945 (declining to address a "speculative" argument and stating that "we will not issue an advisory opinion or give legal advice as to a potential future event").

¶ 46                                        CONCLUSION

¶ 47        The judgment of the circuit court of Will County is affirmed.

¶ 48        Affirmed.

¶ 49        JUSTICE McDADE, specially concurring:

¶ 50        I agree that the Will County circuit court's decision in this case must be affirmed. I write separately because I do not join in the majority's analysis of Ferrell's equal protection argument.

¶ 51        Even if the majority is correct that Ferrell's conviction for the inchoate crime of possession of a controlled substance with intent to deliver is tantamount to the actual sale of narcotics and thus constitutes an "infamous crime," there is no reason to undertake that analysis. Illinois Supreme Court Rule 19 requires, in relevant part, that a party claiming a state statute is unconstitutional must give the Attorney General notice of such a claim. Ill. S. Ct. R 19 (eff. Sept. 1, 2006). It is undisputed in this case that Ferrell did not provide notice to the Attorney General prior to the case being decided by the circuit court. While Ferrell did provide notice after that point, such notice cannot possibly be deemed timely. Thus, he has forfeited his equal protection argument. Forfeiture aside, similar equal protection challenges have already been rejected by other courts. See *People by Foxx v. Agpawa*, 2018 IL App (1st) 171976; *People v. Hofer*, 363 Ill.

18

App. 3d 719, 724 (2006) (holding that statutes prohibiting convicted felons from holding municipal office were constitutional).

¶ 52     Lastly, while I acknowledge that the majority's analysis of Ferrell's pardon-based argument is sufficient to affirm the circuit court's ruling on that issue, I believe there is a more appropriate basis upon which to reject that argument. The statute applicable in this case, section 55-6 of the Township Code, states, in relevant part, that a person is ineligible to hold an elective municipal office if, *at the time the oath is taken*, the person had been convicted of a felony. 65 ILCS 200/55-6 (West 2020). Even if Ferrell's petition for a pardon is granted, it would not change the fact that he still had the felony convictions *at the time* he took the oath to serve as Joliet township trustee and therefore was ineligible. See, *e.g.*, *Patterson v. Dykes*, 804 N.E. 2d 849, 853 (Ind. Ct. App. 2004).